Cyrus M. Sanai, SB#150387
SANAIS
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, California, 90210
Telephone: (310) 717-9840
cyrus@sanaislaw.com

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYRUS SANAI, an individual,<br><br>            Plaintiff,<br><br>      vs.<br><br>ALEX KOZINSKI, in his personal capacity; CATHY CATTERSON, in her personal capacity; THE JUDICIAL COUNCIL OF THE NINTH CIRCUIT, an administrative agency of the United States; MOLLY DWYER, in her official capacity; SIDNEY THOMAS, in his official and personal capacities; PROCTOR HUG JR., in his personal capacity; M. MARGARET MCKEOWN, in her personal capacity; RONALD M. GOULD, in his personal capacity; JOHNNIE B. RAWLINSON, in her personal capacity; AUDREY B. COLLINS, in her personal capacity; IRMA E. GONZALEZ, in her personal capacity; ROGER L. HUNT, in his personal capacity; TERRY J. HATTER JR., in his personal capacity; ROBERT H. WHALEY, in his personal capacity; THE JUDICIAL COUNCIL OF CALIFORNIA, an administrative agency of the State of California; and DOES 1-10, individuals and entities whose identities and capacities are unknown;<br><br>            Defendants. | Case No.  19-CV-08162-YGR<br><br>**MOTION PURSUANT TO 28 U.S.C. §455 FOR (1)  RECUSAL OR, IN THE ALTERNATIVE,  (2) DISCLOSURE BY JUDGE OF RELEVANT INFORMATION**<br><br>Complaint Filed:   December 17, 2019 |

# TABLE OF CONTENTS OF MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION .................................................................................................... 3
II.  BACKGROUND PUBLICLY KNOWN FACTS AND RELEVANT PROCEDURAL HISTORY.................................................................................................................. 3
   A.  The Motion for Disclosure ................................................................................ 3
   B.  The Motion To File Overlength Opposition........................................................ 6
   C.  The Court's Refusal to Consider All of Plaintiff's Written Arguments or Permit Oral Argument........................................................................................................... 6
   D.  The Court Plagiarized Defendants' False Characterization of the outcome of the State Bar Proceedings, and then Denied Their Falsity When it was Pointed Out. .............. 8
   E.  The Court Accepted Other False Characterizations of Irrefutable Facts. ........................ 12
   F.  Judge Rogers Has Pre-emptively Denied Plaintiffs' Motion for A New Trial and to Alter or Amend Judgment............................................................................................. 14
   G.  Based on Publicly Known Facts, Judge Rogers is a Prime Candidate for Elevation to the Ninth Circuit Court of Appeals, and thus Has a Financial Interest in Ruling for the Defendants....................................................................................................... 14
III.  PLAINTIFF HAS FILED THIS MOTION WITH REASONABLE DILIGENCE............ 15
IV.  JUDGE ROGERS SHOULD RECUSE AS A REASONABLE PERSON WOULD DOUBT HER CAPACITY TO BE IMPARTIAL ...................................................... 15
   A.  The 28 U.S.C. §455(a) Standards......................................................................... 15
   B.  Judge Rogers has a Financial Interest in this Case............................................... 18
   C.  Judge Rogers Repeated Plagiarism of False Statements of Fact is in and of Itself Grounds for Recusal................................................................................................... 21
   D.  Judge Rogers' Explicit Statement of Pre-Judging Post-Judgment Motions is Grounds for Recusal........................................................................................................... 22
   E.  Judge Rogers's Conduct Exhibits Pervasive Bias. ............................................... 23
   F.  If Judge Rogers Denies the Motion, she Must Make the Requested Disclosures. ............. 24
IV.  CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.,* 190 F.3d 729 (6th Cir. 1999) . . . . . . . . . 4, 5, 6

*Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868 (2009) . . . . . . . . . . . . . . . . . 22, 28

*Ceats, Inc. v. Continental Airlines, Inc.,* 755 F. 3d 1356 (Fed. Cir. 2014) . . . . . . . . . . . . . . 4

*Davis v. Xerox,* 811 F.2d 1293 (9th Cir.1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*DiLeo v. Ernst & Young,* 901 F.2d 624 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 24

*Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . 3, 7

*Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847 (1988) . . . . . . . . . . . . 18, 23

*Listecki v. Official Comm. of Unsecured Creditors,* 780 F.3d 731 (7th Cir. 2015) . . . . . . . 5, 6

*Liteky v. United States,* 510 U.S. 540 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 24

*Porter v. Singletary,* 49 F.3d 1483 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Antar,* 53 F.3d 568 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Holland,* 519 F.3d 909 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 18, 21

## Statutes

28 U.S.C. §144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. §455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

28 U.S.C. §455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 24, 27

## Other Authorities

"65 Names to Watch When Biden Picks Circuit Judges", *law360.com*, January 3, 2021, found at www.law360.com/articles/1338187/65-names-to-watch-when-biden-picks-circuit-judges. . 16

A. Lancaster, "Another 9th Circuit Judge 'Goes Senior,' Creating Second Vacancy on Court", *law.com*, April 6, 2021 found at https://www.law.com/therecorder/2021/04/06/another-9th-circuit-judge-goes-senior-creating-second-vacancy-on-court/ . . . . . . . . . . . . . . . . . . . . . 16

Administrative Office of the Courts, "Judicial Compensation", uscourts.gov, found at www.uscourts.gov/judges-judgeships/judicial-compensation . . . . . . . . . . . . . . . . . . . . . . 17

Hon. D. Feinstein, "press release", July 13, 2011, found at https://www.feinstein.senate.gov/public/index.cfm/press-releases?ID=BA9E6680-3C53-46EB-9AC4-8B1BBFE6C621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

P. Reyes, "'Unacceptable': Latino groups push Biden to nominate more Hispanic federal judges", *nbcnews.com*, April 6, 2021 found at https://www.nbcnews.com/news/unacceptable-latino-groups-push-biden-nominate-hispanic-federal-judges-rcna594 . . . . . . . . . . . . . . . . . . . . 16

Y. Gonzalez Rogers, Questionnaire for Judicial Nominees, found at www.judiciary.senate.gov/imo/media/doc/YvonneGonzalezRogers-PublicQuestionnaire.pdf. 21

## Rules

Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

L.R. 7-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TO ALL THE CLERK OF THE COURT

Plaintiff Cyrus Sanai hereby files this motion pursuant to 28 U.S.C. §455 requesting the Judge Yvonne Gonzales Rogers either recuses herself under 28 U.S.C. §455(a), or discloses all of the following matters pursuant to 28 U.S.C. §455:

1. Her personal relationships with any of the Defendants;

2. All circumstances in which she has worked with or alongside any Defendant;

3. All communications she has received about her potential appointment to the Ninth Circuit Court of Appeals;

4. All communications she has made about her potential appointment to the Ninth Circuit Court of Appeals;

5. All third-party statements she is aware of regarding her chances to be appointed to the Ninth Circuit Court of Appeals.

By: _____/s/ Cyrus Sanai_____
CYRUS SANAI
Plaintiff

MOTION FOR RECUSAL OR DISCLOSURE

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3

This motion requests, pursuant to 28 U.S.C. §455, that Judge Yvonne Gonzales Rogers either

4

recuse herself pursuant to 28 U.S.C. §455(a), or in the alternative, provide written disclosures

5

pursuant to 28 U.S.C. §455 of specific facts set forth in the immediately preceding page.  This is

6

not a motion under 28 U.S.C. §144, the filing of which is explicitly reserved.

7

8

**II.      BACKGROUND PUBLICLY KNOWN FACTS AND RELEVANT PROCEDURAL HISTORY**

9

　　**A.      The Motion for Disclosure**

10

This is a lawsuit against various present and retired judges, one of whom died shortly before

11

the filing of the complaint.  Four of the Defendants currently serve on the Ninth Circuit Court of

12

Appeals.  Judge Rogers served on at least one panel of that Court with Defendant Judge Gould.

13

*See Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018).

14

Plaintiff filed a motion requesting Judge Rogers to disclose any matters that might be

15

considered relevant by a litigant regarding conflicts of interest, citing a plethora of cases, as

16

follows:

17

> Plaintiff is not moving that Judge Rogers recuse.  Instead, he is requesting that Judge Rogers disclose any of the fully disclose all of her relationships with

18

> the defendants; any Circuit Judge who had an office in Pasadena; Circuit Judge Ikuta and former Circuit Judge Reinhardt; any judge who served on the Judicial

19

> Council of the Ninth Circuit from 1998 to date; and any other information a litigant would be interested in knowing for purposes of either moving for

20

> disqualification or moving to have a judge from outside the Ninth Circuit appointed.

21

> This request raises two issues.  First,  must the  federal judge disclose the

22

> material facts concerning any relationships with Defendants, witnesses and other concerned parties?  Second, even if there is no requirement, should Judge Rogers

23

> do it in this case?

24

> The Sixth and Eleventh Circuit have answered this question in the affirmative.

25

26

27

28

-3-

We believe instead that litigants (and, of course, their attorneys)
should assume the impartiality of the presiding judge, rather than
pore through the judge's private affairs and financial matters.
Further, judges have an ethical duty to "disclose on the record
information which the judge believes the parties or their lawyers
might consider relevant to the question of disqualification." *Porter
v. Singletary,* 49 F.3d 1483, 1489 (11th Cir. 1995). . . . [The judge]
possibly did not consider the matter sufficiently relevant to merit
disclosure, but his non-disclosure did not vest in [the parties] a
duty to investigate him.

*Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.,* 190 F.3d 729, 741 (6th Cir. 1999).

The  Seventh Circuit has agreed that the obligation to uncover conflicts and
disclose them is on the jurist.  *Ceats, Inc. v. Continental Airlines, Inc.,* 755 F. 3d
1356 (Fed. Cir. 2014) (magistrate judge has duty to disclose relationship with law
firm under obligations analogous to 28 U.S. §455).  This includes an obligation to
disclose matters in the public record:

The Archdiocese argues "if the basis for recusal is a matter
of public record, as in this case, then the failure to seek recusal in a
timely manner is inexcusable." But there is no such requirement—
a party does not have an obligation to discover any potentially
disqualifying information that is in the public record. The onus is
on the judge to ensure any potentially disqualifying information is
brought to the attention of the litigants. 28 U.S.C. § 455(c) ("A
judge should inform himself about his personal and fiduciary
financial interests."); *see also Liljeberg v. Health Servs.
Acquisition Corp.,* 486 U.S. 847, 873 n. 9, 108 S.Ct. 2194, 100
L.Ed.2d 855 (1988) ("[N]otwithstanding the size and complexity
of the litigation, judges remain under a duty to stay informed of
any personal or fiduciary financial interest they may have in cases
over which they preside."). It would be unreasonable, unrealistic
and detrimental to our judicial system to expect litigants to
investigate every potentially disqualifying piece of information
about every judge before whom they appear. "[L]itigants (and, of
course, their attorneys) should assume the impartiality of the
presiding judge, rather than pore through the judge's private affairs
and financial matters.... `Both litigants and counsel should be able
to rely upon judges to comply with their own Canons of Ethics.'"
*Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.,* 190 F.3d 729, 742 (6th
Cir.1999) (*quoting Porter v. Singletary,* 49 F.3d 1483, 1489 (11th
Cir. 1995)).

A judge should stay up to date on her financial and other
interests so she can make informed decisions and avoid either the
appearance of impropriety (28 U.S.C. § 455(a)) or actual bias (28
U.S.C. § 455(b)). The informed judge may then recuse herself on
her own motion, if necessary. *See Hampton v. Chicago,* 643 F.2d
478, 480 n. 7 (7th Cir.1981) (per curiam) (noting district court

1  "may disqualify himself on his own motion since, for example, he
2  is probably best informed about his minor children's financial
   interests"). The informed judge can also disclose any concerns he
3  might have so that the parties can proceed with full knowledge. 28
   U.S.C. § 455(e) (noting "waiver may be accepted [under § 455(a)]
4  provided it is preceded by a full disclosure on the record of the
   basis for disqualification"). Had that been done here, any purported
5  timing issues or concerns that the Committee had questionable
   motives in filing the motion would have resolved themselves
6  earlier in the proceedings.

7           Under 28 U.S.C. § 455(a), a judge "shall disqualify himself
   in any proceeding in which his impartiality might reasonably be
8  questioned." Whether a judge's impartiality might be reasonably
   questioned is an objective determination. *In re Hatcher,* 150 F.3d
9  631, 637 (7th Cir.1998). The question is whether a reasonable
   person could perceive "a significant risk that the judge will resolve
10 the case on a basis other than the merits." *Id.* (*quoting Hook v.
   McDade,* 89 F.3d 350, 354 (7th Cir.1996)).
11 *Listecki v. Official Comm. of Unsecured Creditors,* 780 F.3d 731, 750-1 (7th Cir.
12 2015).
   ….
13         There is quite simply no principled argument that disclosure is not
14 required, for the reasons articulated in *Listecki* and *Am. Textile Mfrs. Inst., Inc.,*
   *supra.* But disclosure is necessary for a second reason.  Part of the underlying
15 justification for the requests for relief in the Complaint are that Judge Kozinski's
   current occupation, as a lawyer practicing before the Ninth Circuit Court of
16 Appeals, is a threat to judicial integrity and due process.  Kozinski can effectively
   operate with impunity, as he is permanently protected by the Judicial Council
17 which actively enabled his sexual misconduct for decades.  Even if there were a
   change of heart by some members, Kozinski's ability to expose his enablers at
18 any time forces them to continue to defend him and to overlook any misconduct
   he may commit as a lawyer, such as seeking secret ex parte relief from his former
19 colleagues on behalf of clients.  This risk is exacerbated by the fact that the Ninth
   Circuit refuses to recognize a duty of disclosure by federal judges of relationships
20 with attorneys, lawyers and witnesses.  Accordingly, one of the requested items of
   injunctive relief is an order requiring the Judicial Council to promulgate effective
21 rules and procedures to ensure this is done in the future.  See Complaint, Docket
22 #1, at 36, ¶85.
23 Application for Disclosure by Judge of Relevant Information, etc., Docket No. 8, at 7:5-10:16.

24     The application expressly cited *Listecki v. Official Comm. of Unsecured Creditors,* 780 F.3d
25 731(7th Cir. 2015) and *Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.,* 190 F.3d 729, 741 (6th Cir.
26 1999) to support the contention that 28 U.S.C. §455 requires disclosure, and the quotations from
27 those cases cite three other supporting decisions, in particular *Porter v. Singletary,* 49 F.3d 1483,
28

-5-

1489 (11th Cir. 1995), where the Eleventh Circuit held that judges have an ethical duty to "disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification." *Porter v. Singletary,* 49 F.3d 1483, 1489 (11th Cir. 1995).

Judge Rogers denied the motion stating that:
> The Court perceives no reason for disqualification nor does the Court have any relevant information to share or to disclose pursuant to section 455.[1] To the extent plaintiff requires more information, the request is **DENIED**.
> _____
> ….The Court is aware of no authority requiring disclosures to prove a negative, that is, where no basis for disqualification exists.

Order of March 20, 2020 Docket No. 27 at 2:1-3 and fn. 1.

The statement by the Court that she was "aware of no authority requiring disclosures to prove a negative, that is, where no basis for disqualification exists" demonstrates that she did not read Plaintiff's Motion for Disclosure, Docket No. 8.  In that motion Plaintiff expressly cited three cases, *Listeki, supra, Am. Textile Mfrs. Inst., supra, and Porter, supra,* where the appellate courts held that judges have an ethical duty to "disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification", even if the judge believes no basis for disqualification exists.  An example of such information that parties or their lawyers would consider relevant is the fact that Judge Rogers served on the Ninth Circuit in at least one appeal with Defendant Judge Gould. *See Gordon, supra.*

## B.     The Motion To File Overlength Opposition

Plaintiff filed a motion to be allowed an overlength opposition to the motion to dismiss of 50 pages.  See Docket No. 38.  The Court permitted seven extra pages, all of which were used.  See Order, Docket No. 44; Opposition to Motion to Dismiss, Docket No. 50.

## C.     The Court's Refusal to Consider All of Plaintiff's Written Arguments or Permit Oral Argument

In motion practice, a moving party normally gets the first and last written word, and then non-moving party is ordinarily granted oral argument to address any new issues or facets of raised issues.  A Court has the discretion to eliminate oral argument if all matters are fully addressed.

In this case, in its reply brief, the Defendants raised multiple new issues. One of the new issues was arguing that Plaintiff had not exhausted administrative remedies, because the motions Plaintiff filed to vacate the 2010 Order have never been ruled upon.  This concession that administrative remedies must be exhausted means that any statute of limitations was tolled.

Plaintiff explicitly raised this problem in administrative motions to hold oral argument or grant leave to file a sur-reply.  *See* Motion for Oral Argument or Sur-Reply, Docket No. 56. However, Plaintiff was able to address the issue as well in his reply in support of his motion for leave to amend.  He was allowed to do so because the Defendants incorporated by reference their arguments from their pleadings concerning the motion to dismiss.  *See* Opposition to Motion for Leave to Amend, Docket No. 61 at 4.  Because Defendants incorporated their arguments from those pleadings, Plaintiff was entitled, under the local rules and under due process, to address them in his reply.  *See* L.R. 7-3.

The Court's response to Plaintiff's filing a reply to the Defendants' argument that leave to amend was futile because of the arguments made in the briefing on the motion to dismiss was to refuse to address the arguments in the reply and threaten sanctions if Plaintiff raised them again as follows:

> The Court notes that Sanai has bootstrapped arguments to his motion for leave to amend that are primarily addressed against the moving defendants' reply in support of their motion to dismiss. See e.g., Mot. at 6-11 (Dkt. No. 55) (section titled "The Defendants Have Asserted a Theory of Immunity that Both Violates Established United States Supreme Court Law and Is So Egregious that It Must be Explicitly Rejected" and discussion therein). In other words, Sanai has given himself a surreply (and then a later additional reply brief). The Court cabins its analysis to the proposed amendments and the arguments made in support of his request for leave to file a first amended complaint. The Court expressly warns Sanai from continuing with similar gamesmanship in this litigation, or else risk facing sanctions.

April 9, 2021 Order, Docket No. 72 at 15, fn 16.

The right to address these issues arises because the Defendants chose to incorporate their arguments from the Motion to Dismiss in their opposition to the Motion to File a First Amended Complaint.  The Court has thus admitted that it failed to consider arguments relevant to the Motion to Dismiss.

MEMORANDUM OF POINTS AND AUTHORITIES

1

2       **D.**     **The Court Plagiarized Defendants' False Characterization of the**

3               **outcome of the State Bar Proceedings, and then Denied Their**
              **Falsity When it was Pointed Out**

4 The Court stated that:

5       The State Bar apparently filed such charges in 2014, and, according to Sanai,

6       **all but one of the charges, a charge related to Sanai's filing of judicial**
      **misconduct complaints, were dismissed.**

7 April 9, 2021 Order, Docket No. 72 at 6:1-3 (bold emphasis added).

8    This finding of fact ignores the pleadings that state the exact opposite.  The material facts

9 alleged by Plaintiff is that the State Bar Court dismissed all of the charges, including the charge

10 related to filing of the judicial misconduct complaints on the merits, with one unspecified

11 exception :

12       70.    By 2014 the OCTC finalized a strategy of bringing claims that
were barred by the limitation rule and the evidence-less claim of the JC to trial.

13 Defending himself, Sanai obtained dismissal of all but one charge.  The State Bar
Court judge wrote about the charge relating to the reporting of judicial

14 misconduct that:

15          In this count the State Bar alleges that between October
2008 and September 2010, Respondent "filed and maintained

16 formal judicial complaints with the Ninth Circuit Judicial
Council against approximately 19 federal judges, when such

17 complaint were frivolous and made for improper reasons . . . . " It
alleges that the filing of these complaints constituted acts of moral

18 turpitude.

19    In his motion, Respondent argues that the evidence received by
this court is insufficient to establish clear and convincing evidence

20 to support this  count.
   The State Bar did not put in evidence the complaints actually

21 filed by Respondent against the federal judges. **In response to this
court's inquiry, it was informed by the State Bar that it was**

22 **unable to do so due to the Ninth Circuit's refusal to provide
those complaints to the State Bar.** Being unable even to read the

23 complaints filed by Respondent, this court cannot conclude
that any of those complaints were filed frivolously or constituted

24 an act of moral turpitude. **To the extent that this court is aware
of the content of one of those complaints, the record shows that**

25 **it was apparently justified and resulted in a formal apology by
the judge and a self-administered recusal by him from the**

26 **pending matter involving Respondent.**

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

71.     In a subsequent order dismissing more charges, the State Bar Court

judge wrote as follows:

> In 2010, a complaint was made to the State Bar by the Judicial
> Council of the Ninth Circuit regarding Respondent's purportedly
> frivolous complaints to it about a number of federal judges. This
> complaint by the Judicial Council of the Ninth Circuit subsequently
> formed the basis for Count 6 of the pending NDC. When the
> complaint was received, the State Bar opened case No. 10-0-09221
> (the '10 case) and contacted Respondent about the matter. **Then,
> after learning that the Judicial Council of the Ninth Circuit
> would not release to the State Bar the actual complaints filed by
> Respondent against the federal judges, the State Bar decided to
> issue a warning letter to Respondent in November 2011, and
> closed the case.[7] (Ex. 1040.) That decision was explained, both
> orally and in writing, by the State Bar to Cathy Catterson, a
> representative of the Judicial Council of the Ninth Circuit, on
> November 8, 2011. (Ex. 1041). Thereafter, she complained of
> the State Bar's decision in a letter, dated January 19, 2012,
> directed to the then Acting Chief Trial Counsel of the State Bar.**
>
> [7] The State Bar had previously notified the Judicial Council of the
> Ninth Circuit in May 2011 that it would be difficult to pursue any
> complaint that Respondent's complaints against various federal
> appellate justices were frivolous without having access to the actual
> underlying complaints. As stated by the State Bar at that time: "As
> you may be aware, to prevail in State Bar disciplinary proceedings,
> our office must prove by clear and convincing evidence that an
> attorney committed willful misconduct. Although the Judicial
> Council's order of September 30 2010, will certainly be a useful
> piece of evidence to establish that Mr. Sanai engaged in misconduct
> by filing frivolous misconduct complaints, it would be insufficient
> standing alone to prove by clear and convincing evidence that Mr.
> Sanai engaged in misconduct warranting discipline, especially since
> the order does not include any specific findings of fact but rather
> includes only the conclusion that Mr. Sanai abused the misconduct
> complaint procedure." (Ex. 1039, p. 2.)
>
> [8] Given the State Bar's inability to provide this court with a copy of
> the actual complaints filed by Respondent against the federal
> judges, this court – as accurately predicted by the State Bar in May
> 2011 –eventually dismissed that count at trial due to the State Bar's
> failure to provide clear and convincing evidence that those
> complaints were frivolous. The evidence was not sufficient even to
> enable this court to identify all of the judges against whom
> complaints had been filed.

Complaint, Docket #1 at ¶¶ 70-71  (bold emphasis in original, underline emphasis added).

Plaintiff thus put into his Complaint not only a portion of the order dismissing the charge based on the Defendants' complaint to the State Bar, but also a subsequent order discussing and reiterating the judicially-noticeable fact that the State Bar Court "eventually dismissed that count at trial due to the State Bar's failure to provide clear and convincing evidence that those complaints were frivolous. The evidence was not sufficient even to enable this court to identify all of the judges against whom complaints had been filed."

So how did the Court make this manifest error disregarding judicially noticeable facts?  It's manifestly obvious.  Rather than read the Complaint, this Court transcribed the Defendants' manifestly false characterization of the State Bar Court proceedings almost word-for-word:

> The State Bar apparently filed such charges in 2014, and, according to Plaintiff, all but one of the charges—a charge related to Plaintiff's filing of judicial misconduct complaints—were dismissed.

Motion to Dismiss, Docket No. 36, at 14:8-11.

The only change between this Court's verbiage and the Defendants' is that this Court changed "Sanai" to "Plaintiff."

The fact that Judge Rogers did not read the Complaint, but instead transcribed the Defendants' characterization of it, is a dispositive error as to Count 6.  These Counts do not involve any judicial or administrative acts, but rather making the bar complaint, which any person can do.  It is an explicit requirement for the cause of action alleged that Plaintiff had prevailed on count alleging misconduct in filing the judicial misconduct complaints.  Accordingly, the Court's finding of fact was an implicit rejection of Count 6 on the merits.

But the Court's defalcation raises constitutional issues as well.  It is clear from the Court's cut and paste of the Defendants' false characterization of Plaintiff's complaint, and in other places in the April 9, 2021 order discussed below, that it refused to follow the requirements of motion practice, which includes reading all of Plaintiff's pleadings and his addressing his arguments.  Instead, the Court only read the submissions of the Defendants, and only included in its order those issues which the Defendants addressed.  Because the Court did not address all of the arguments raised by Defendants, it likewise did not address everything Plaintiff stated.  But there

-10-
MEMORANDUM OF POINTS AND AUTHORITIES

are a sufficiently large number of examples to demonstrate that this Court violated Plaintiff's

right to be heard in a meaningful time and in a meaningful manner.

Cutting and pasting a FALSE statement of fact creates a second issue of due process; it

creates in reasonable minds that the judge is not exercising independent judgment, but is instead

the agent of the parties:

> From time to time district judges extract portions of briefs and use them as the
> basis of opinions. We have disapproved this practice because it disguises the
> judge's reasons and portrays the court as an advocate's tool, even when the judge
> adds some words of his own. *E.g., Walton v. United Consumers Club, Inc.,* 786
> F.2d 303, 313-14 (7th Cir.1986); *In re X-Cel, Inc.,* 776 F.2d 130 (7th Cir.1985).

*DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (1990).

Plaintiff made the argument above, supported with the same citations, in his motion for leave

to file a motion for reconsideration.  Rather than admit the judicially noticeable fact that her

characterization of the outcome of the bar proceedings was not what Plaintiff alleged and was

false to boot, Judge Rogers doubled down, admitting she had relied upon the Defendants' motion

but vouched for it as "an accurate and relevant summary."

Plaintiff has filed herewith a request for judicial notice of the following documents and facts:

1. The Order of the California State Bar Court in *In Re Sanai,* entered on
   February 6, 2015, a true and correct copy of which is attached as Exhibit 1
   thereto.
2. The Order of the California State Bar Court in *In Re Sanai*, entered on March
   20, 2015, a true and correct copy of which is attached as Exhibit 2 thereto.
3. The fact that in Cyrus Sanai's Complaint in this action, he accurately quotes a
   portion of the February 6, 2015 order at Paragraph 70 of the Complaint,
   showing that the count arising from the complaint filed with the State Bar
   against Cyrus Sanai at the order of the Judicial Council was dismissed with
   prejudice.
4. The fact that in Cyrus Sanai's Complaint in this action, Docket No. 1 (the
   "Complaint"), he accurately quotes a portion of the March 20, 2015 order at
   Paragraph 71 of the Complaint, showing that the count arising from the
   complaint filed with the State Bar against Cyrus Sanai at the order of the
   Judicial Council was dismissed with prejudice.
5. The fact that the Defendants' Motion to Dismiss, Docket No. 36, at 14:8-11
   states that:
   > "The State Bar apparently filed such charges in 2014, and, according to
   > Plaintiff, all but one of the charges—a charge related to Plaintiff's filing of
   > judicial misconduct complaints—were dismissed."
6. The fact that the Defendants' statement quoted in paragraph 5 above
   ("Defendants' Statement") above is false.

MEMORANDUM OF POINTS AND AUTHORITIES

7.  The fact that the Defendants' Statement was relied upon by the Judge Rogers when she found in her April 9, 2021 Order, Docket No. 72 at 6:1-3 as follows:

> The State Bar apparently filed such charges in 2014, and, according to Sanai, **all but one of the charges, a charge related to Sanai's filing of judicial misconduct complaints, were dismissed.**

8.  The fact that the Defendants' statement quoted in paragraph 7 above ("Judge Rogers' Statement") is false.

9.  The fact that the falsity of both Defendants' Statement and Judge Rogers' Statement was brought to Judge Rogers' attention in a motion for leave to file a motion for reconsideration, Docket No. 73.

10. The fact that the Court stated in its order denying the motion for leave to file a motion for reconsideration, Docket No. 75  that "While the Court's summary of the background section is consistent with that of the defendants' background proffered in their briefing, it is an accurate and relevant summary…."

11. The fact that Judge Rogers Statement, part of "summary of the background section" is not accurate.

*See* Request for Judicial Notice filed herewith.

Judicial notice of the two documents and nine statements of fact in the request is required.  Judge Rogers' refusal to do so will demonstrate that he absolutely refuses to adjudicate this action in line with the allegations of the Complaint and the irrefutable facgts.

## E. The Court Accepted Other False Characterizations of Irrefutable Facts

Judge Rogers' Statement (as defined above) is not the only false statement regarding Plaintiff's allegations or the underlying record.  One more example will suffice to show that Judge Rogers did not review Plaintiff's complaint or the judicially noticeable orders attached to the motion to dismiss, but instead relied on the characterization of them by the Defendants, which is in numerous regards false, incomplete, and misleading:

Following Sanai's filing of a petition for review of Judge Reinhardt's 2009 Order and his response to the 2010 Show Cause Order, the Judicial Council denied the petition, publicly reprimanded Sanai, and imposed a pre-filing order, which Sanai identifies as the "Censure Order". *See* Order, *In re Complaint of Judicial Misconduct* (Sept. 30, 2010) ("2010 Order") (Ex. D to the Mot.). Reiterating its prior conclusion that Sanai's misconduct complaints were "frivolous," the Judicial Council directed the Clerk to "serve this order on the State Bar of California . . . to consider appropriate disciplinary action." 2010 Order at 16625. **It further required any future misconduct complaint or petition for review submitted by Sanai to be lodged by the Clerk and subjected to a determination of whether it "merits**

**further review and should be filed.”** *Id.* **at 16626.** The Judicial Council provided that Sanai could, on or after September 1, 2012, “petition the court to lift the pre-filing review order.” *Id.*

April 9, 2021 Order, Docket No. 72, at 5 fn. 9 (bold emphasis added).

The bold language is false and incomplete.  What the Ninth Circuit Judicial Council actually wrote in that  order is:

> **(1) This pre-filing review order shall apply to all misconduct complaints or petitions for review filed by complainant that relate to this matter.**

Exhibit D to Motion to Dismiss Docket No. 36-5 at 16626.

The pre-filing order only related to further misconduct complaints related to the ones Plaintiff previously filed.  Judge Rogers’ contention that “any future misconduct complaint submitted by Sanai” was subject to the pre-filing order is manifestly false.

So how did Judge Rogers make this second error?  Not by reading the actual text of the order, which the Defendants attached to their motion to dismiss.  Instead, she once again plagiarized the Defendants’ motion to dismiss:

> It further required any future misconduct complaint or petition for review submitted by Plaintiff to be lodged by the Clerk and subjected to a determination of whether it “merits further review and should be filed.” *Id.* at 16626.

Motion to Dismiss, Docket No. 36 at 8:20-23

Compare this to the language in her order quoted above in bold:

> **It further required any future misconduct complaint or petition for review submitted by Sanai to be lodged by the Clerk and subjected to a determination of whether it “merits further review and should be filed.”** *Id.* **at 16626.**

April 9, 2021 Order, Docket No. 72, at 5 fn. 9 (bold emphasis added).

The sentences are precisely the same, except that “Plaintiff” is once again substituted for “Sanai”.  This is judicial plagiarism, pure and simple, and once again, it demonstrates that the Defendants’ summary in their opposition is NOT “an accurate and relevant summary.”  It is fundamentally inaccurate, but in this case, it includes a citation to the original document which proves the inaccuracy.  Judge Rogers, however, did not review the cited document.  She simply accepted the Defendants’ false characterization of the background without bothering to read Defendants’ Exhibit D.

There are multiple other examples of Judge Rogers' judicial plagiarism, which she does not deny.  What she does contend is that the background statements are true, when they are manifestly, judicially noticeably, false.

### F. Judge Rogers Has Pre-emptively Denied Plaintiffs' Motion for A New Trial and to Alter or Amend Judgment

Because Judge Rogers did not enter a judgment alongside her April 9, 2021 order, Docket No. 73, Plaintiff filed a motion for leave to file a motion for reconsideration of the interlocutory order. She then entered a judgment, Docket No. 74, and denied the motion, in which she stated the following:

> To the extent that Sanai has issue with the Order and the substance therein, the proper procedure is to appeal this Order to the Ninth Circuit Court of Appeals for a review of the Order at Docket Number 72.

April 12, 2021 Order Docket No. 75 at 1:16-18.

Judge Rogers statement that Plaintiff should appeal "the Order" of dismissal is misleading. The order is not appealable unless she had failed to enter judgment and 150 days have passed.  See Fed. R. Civ. P. 58.  Assuming the district court judge or her clerk is doing her job, one appeals from a final judgment, not an order.  In this case, Judge Rogers entered TWO judgments, one at docket no. 74, and one at Docket no. 76, which is just bizarre.

More important, Judge Rogers has pre-emptively denied any post-judgment motion under Fed. R. Civ. P. 59 for a new trial or to alter or amend the judgment, or a motion under Fed. R. Civ. P. 60 to vacate the dismissal order and judgment.  Plaintiff is entitled to file these motions and have them ruled upon by Judge Rogers; however, she has explicitly stated that the only remedy is appeal, and not a post-judgment motion.  Her statement demonstrated prejudice in its literal sense; she has pre-judged these motions that have yet to be filed.

### G. Based on Publicly Known Facts, Judge Rogers is a Prime Candidate for Elevation to the Ninth Circuit Court of Appeals, and thus Has a Financial Interest in Ruling for the Defendants

Judge Rogers is a Democrat appointed Judge.  It is publicly recognized that she is one of the candidates for appointment to the Ninth Circuit Court of Appeals for President Biden.  *See* "65 Names to Watch When Biden Picks Circuit Judges", *law360.com*, January 3, 2021, found at www.law360.com/articles/1338187/65-names-to-watch-when-biden-picks-circuit-judges.  Of

1 course, the possibility for her appointment actually arises when a serving circuit judge from

2 California resigns or takes senior status. That occurred on April 6, 2021, when Circuit Judge

3 Berzon announced her intention to take senior status. *See* A. Lancaster, "Another 9th Circuit

4 Judge 'Goes Senior,' Creating Second Vacancy on Court", *law.com*, April 6, 2021 found at

5 https://www.law.com/therecorder/2021/04/06/another-9th-circuit-judge-goes-senior-creating-

6 second-vacancy-on-court/

7      President Biden is under extraordinary political pressure to appoint more Hispanic judges to

8 the Courts of Appeal. P. Reyes, "'Unacceptable': Latino groups push Biden to nominate more

9 Hispanic federal judges", *nbcnews.com*, April 6, 2021 found at

10 https://www.nbcnews.com/news/unacceptable-latino-groups-push-biden-nominate-hispanic-

11 federal-judges-rcna594

12      Judge Rogers' candidacy for the Ninth Circuit could be torpedoes if she is blackballed, directly

13 or indirectly, by sitting or former federal judges, including Attorney General Merrick Garland,

14 who was a federal judge before his appointment to the Biden Administration.

15      Judge Rogers has a financial interest in promotion. Circuit Court judges are paid more than

16 District Court judges; the current differential is about $30,000 per annum. *See* Administrative

17 Office of the Courts, "Judicial Compensation", uscourts.gov, found at www.uscourts.gov/judges-

18 judgeships/judicial-compensation

19 **III.     PLAINTIFF HAS FILED THIS MOTION WITH REASONABLE DILIGENCE**

20      This motion is being filed nine days after the last action of this Court justifying recusal.

21 The key even which created a financial interest for this Court, the decision of Circuit Judge

22 Berzon to seek senior status, occurred 15 days ago.

23 **IV.     JUDGE ROGERS SHOULD RECUSE AS A REASONABLE PERSON WOULD
DOUBT HER CAPACITY TO BE IMPARTIAL**

24

25      **A.  The 28 U.S.C. §455(a) Standards**

26      Parties in Federal Court are entitled to proceedings presided over by judges who are not

27 only free from bias, but also free from the appearance of bias. This principle is set forth in 28

28 U.S.C. §455(a), which states that: "Any justice, judge, or magistrate of the United States shall

disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a).  A judge must disqualify himself even if he was previously unaware of the facts giving rise to an appearance of the absence of impartiality.  As the United States Supreme Court held:

> a violation of § 455(a) is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality, notwithstanding a finding that the judge was not actually conscious of those circumstances.

*Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 850 (1988).

"Section 455(a) covers acts that may appear to create a conflict even if in reality none exists."  *Davis v. Xerox,* 811 F.2d 1293, 1295 (9th Cir.1987).

The test for disqualification under § 455(a) asks "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland,* 519 F.3d 909, 913 (9th Cir. 2008) (internal quotation marks omitted).  "The `objective' standard is a check to avoid even the appearance of partiality, . . . and ensure that the judge's decision is reasonable to an informed observer." *Id.* at 914.

Some Ninth Circuit case law, as opposed to *Holland, supra,* refers to the "extrajudicial source rule" which stated that grounds for disqualification had to arise from evidence other than the Court's rulings and opinions.  This is no longer the law under *Liteky v. United States,* 510 U.S. 540 (1994), where the Supreme Court wrote:.

> [T]here came to be generally applied in the courts of appeals a doctrine, more standard in its formulation than clear in its application, requiring —to take its classic formulation found in an oft-cited opinion by Justice Douglas for this Court—that "[t]he alleged bias and prejudice to be disqualifying [under § 144] must stem from an extrajudicial source." *United States v. Grinnell Corp.,* 384 U. S. 563, 583 (1966). We say that the doctrine was less than entirely clear in its application for several reasons. First, Grinnell (the only opinion of ours to recite the doctrine) clearly meant by "extrajudicial source" a source outside the judicial proceeding at hand—which would include as extrajudicial sources earlier judicial proceedings conducted by the same judge (as are at issue here).[1] Yet many, perhaps most, Courts of Appeals considered knowledge (and the resulting attitudes) that a judge properly acquired in an earlier proceeding not to be "extrajudicial." *See, e. g., Lyons v. United States,* 325 F. 2d 370, 376 (CA9), cert. denied, 377 U. S. 969 (1964); *Craven v. United States,* 22 F. 2d 605, 607-608 (CA1 1927). Secondly, the doctrine was often quoted as justifying the refusal to consider trial rulings as the basis for § 144 recusal. *See, e. g., Toth v. Trans World*

-16-

*Airlines, Inc.,* 862 F. 2d 1381, 1387-1388 (CA9 1988); *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F. 2d 1287, 1301 (CADC), *cert. denied,* 488 U. S. 825 (1988). But trial rulings have a judicial expression rather than a judicial source. They may well be based upon extrajudicial knowledge or motives. *Cf. In re International Business Machines Corp.,* 618 F. 2d 923, 928, n. 6 (CA2 1980). And finally, even in cases in which the "source" of the bias or prejudice was clearly the proceedings themselves (for example, testimony introduced or an event occurring at trial which produced unsuppressible judicial animosity), the supposed doctrine would not necessarily be applied. *See, e. g., Davis v. Board of School Comm'rs of Mobile County,* 517 F. 2d 1044, 1051 (CA5 1975) (doctrine has "pervasive bias" exception), *cert. denied,* 425 U. S. 944 (1976); *Rice v. McKenzie,* 581 F. 2d 1114, 1118 (CA4 1978) (doctrine "has always had limitations").

Whatever the precise contours of the "extrajudicial source" doctrine (a subject to which we will revert shortly), it is the contention of petitioners that the doctrine has no application to § 455(a). Most Courts of Appeals to consider the matter have rejected this contention……

…..

It seems to us that the origin of the "extrajudicial source" doctrine, and the key to understanding its flexible scope (or the so-called "exceptions" to it), is simply the pejorative connotation of the words "bias or prejudice." Not all unfavorable disposition towards an individual (or his case) is properly described by those terms. One would not say, for example, that world opinion is biased or prejudiced against Adolf Hitler. The words connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess (for example, a criminal juror who has been biased or prejudiced by receipt of inadmissible evidence concerning the defendant's prior criminal activities), or because it is excessive in degree (for example, a criminal juror who is so inflamed by properly admitted evidence of a defendant's prior criminal activities that he will vote guilty regardless of the facts). The "extrajudicial source" doctrine is one application of this pejorativeness requirement to the terms "bias" and "prejudice" as they are used in §§ 144 and 455(b)(1) with specific reference to the work of judges.

The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J. P. Linahan, Inc.,* 138 F. 2d 650, 654 (CA2 1943). Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and

-17-

proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

It is wrong in theory, though it may not be too far off the mark as a practical matter, to suggest, as many opinions have, that "extrajudicial source" is the only basis for establishing disqualifying bias or prejudice. **It is the only common basis, but not the exclusive one, since it is not the exclusive reason a predisposition can be wrongful or inappropriate. A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment. (That explains what some courts have called the "pervasive bias" exception to the "extrajudicial source" doctrine. *See, e. g., Davis v. Board of School Comm'rs of Mobile County,* 517 F. 2d 1044, 1051 (CA5 1975), cert. denied, 425 U. S. 944 (1976).)**

With this understanding of the "extrajudicial source" limitation in §§ 144 and 455(b)(1), we turn to the question whether it appears in § 455(a) as well…
….
For all these reasons, we think that the "extrajudicial source" doctrine, as we have described it, applies to § 455(a). **As we have described it, however, there is not much doctrine to the doctrine. The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a necessary condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a sufficient condition for "bias or prejudice" recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" factor, than of an "extrajudicial source" doctrine, in recusal jurisprudence.**

*Liteky, supra,* 545-555 (bold emphasis added).  *See also Holland, supra,* at 914.

The bulk of the published and unpublished case law in the Ninth Circuit holds that an extra-judicial source is required for statutory disqualification.  All such authority has been overruled since 1994, and any case law stating that is the standard is wrongly decided and cannot be the basis of any valid decision.

## B.  Judge Rogers has a Financial Interest in this Case

Judge Rogers has a financial interest in ensuring that she does not get blackballed from an appointment to the Court of Appeals, to the tune of $30,000 per year or more. A financial interest

MEMORANDUM OF POINTS AND AUTHORITIES

1   is a the paradigm "extrajudicial source."   This financial interest arose once Circuit Judge Berzon
2   took senior status fifteen days ago, and Judge Rogers' appointment to the Court of Appeals
3   became a serious possibility.   Her potential candidacy has been recognized in the press, and is
4   heightened by Democratic pressure groups demands to point more Hispanic judges.   Judge
5   Gonzales Rogers is, of course, considered Hispanic.   *See* Hon. D. Feinstein, "press release", July
6   13, 2011, found at https://www.feinstein.senate.gov/public/index.cfm/press-
7   releases?ID=BA9E6680-3C53-46EB-9AC4-8B1BBFE6C621 ("If confirmed, she would be the
8   first Latina district judge in Northern District.")  and she has joined Hispanic legal groups
9   including La Raza Legal Association and the Hispanic National Bar Association.   *See* Y.
10  Gonzalez Rogers, Questionnaire for Judicial Nominees, found at
11  www.judiciary.senate.gov/imo/media/doc/YvonneGonzalezRogers-PublicQuestionnaire.pdf.  The
12  Hispanic National Bar Association is one of the organizations which is demanding the
13  appointment of more Hispanic judges.   *See* Reyes, nbcnews.com, *supra.*   Judge Rogers has
14  admitted to being a lifetime member of that organization.   *See Questionnaire, supra,* at 4.   Any
15  reasonable person would suspect that as a life member of the Hispanic National Bar Association,
16  she will be the first choice of that group and its allies to take Judge Berzon's place, and that Judge
17  Rogers believes this.

18         Any reasonable person would reasonably suspect that Judge Rogers could not be impartial
19  in any case where a ruling for a plaintiff could result in her being blackballed and not nominated
20  to the Ninth Circuit.   There are four potential pathways for the Defendants Judges to do so.   First,
21  the Defendant judges could communicate to President Biden, who has a former head of the Senate
22  Judiciary Committee has direct relationship with many federal judges.   Second, they could
23  communicate it to Attorney General Garland, a former federal judge.   Third, the Defendants in
24  this case could ask their lawyers to communicate their opposition; by a stroke of good fortune,
25  their lawyers are members of the DOJ and could pass messages up the chain without fear of
26  exposure.   Fourth, the Defendants judges could pass along opposition to either of California's
27  Senators.

28

MEMORANDUM OF POINTS AND AUTHORITIES

1

2   Judge Rogers interest in this case are much stronger and probable than conflicts which

3   have been held to meet the higher, constitutional standard.  *See, e.g. Caperton v. A.T. Massey*

    *Coal Co., Inc.*, 556 U.S. 868 (2009).  Surveying the history of judicial financial interest cases at

4   the constitutional level, the Supreme Court held that:

5           The Court was thus concerned with more than the traditional common-law
            prohibition on direct pecuniary interest. It was also concerned with a more general
6           concept of interests that tempt adjudicators to disregard neutrality.
            This concern with conflicts resulting from financial incentives was elaborated
7       in *Ward v. Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), which
        invalidated a conviction in another mayor's court. In Monroeville, unlike in
8       Tumey, the mayor received no money; instead, the fines the mayor assessed went
        to the town's general fisc. The Court held that "[t]he fact that the mayor [in
9       Tumey] shared directly in the fees and costs did not define the limits of the
        principle." 409 U.S., at 60, 93 S.Ct. 80. The principle, instead, turned on the
10      "`possible temptation'" the mayor might face; the mayor's "executive
        responsibilities for village finances may make him partisan to maintain the high
11      level of contribution [to those finances] from the mayor's court." Ibid. As the
        Court reiterated in another case that Term, "the [judge's] financial stake need not
12      be as direct or positive as it appeared to be in *Tumey." Gibson v. Berryhill*, 411
        U.S. 564, 579, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (an administrative board
13      composed of optometrists had a pecuniary interest of "sufficient substance" so
        that it could not preside over a hearing against competing optometrists).
14          The Court in Lavoie further clarified the reach of the Due Process Clause
        regarding a judge's financial interest in a case. There, a justice had cast the
15      deciding vote on the Alabama Supreme Court to uphold a punitive damages
        award against an insurance company for bad-faith refusal to pay a claim. At the
16      time of his vote, the justice was the lead plaintiff in a nearly identical lawsuit
        pending in Alabama's lower courts. His deciding vote, this Court surmised,
17      "undoubtedly `raised the stakes'" for the insurance defendant in the justice's suit.
        475 U.S., at 823-824, 106 S.Ct. 1580.
18          The Court stressed that it was "not required to decide whether in fact [the
        justice] was influenced." *Id.,* at 825, 106 S.Ct. 1580. The proper constitutional
19      inquiry is "whether sitting on the case then before the Supreme Court of Alabama
        `"would offer a possible temptation to the average ... judge to ... lead him not to
20      hold the balance nice, clear and true."'" *Ibid.* (*quoting Monroeville, supra,* at 60,
        93 S.Ct. 80, in turn quoting Tumey, supra, at 532, 47 S.Ct. 437). The Court
21      underscored that "what degree or kind of interest is sufficient to disqualify a judge
        from sitting `cannot be defined with precision.'" 475 U.S., at 822, 106 S.Ct. 1580
22      (*quoting Murchison,* 349 U.S., at 136, 75 S.Ct. 623). In the Court's view,
        however, it was important that the test have an objective component.
23  *Caperton, supra* at 884-5.

24      In *Caperton,* the Supreme Court held that a State Supreme Court Justice's interest in obtaining

25  a judicial position was sufficient incentive to favor a major donor to his election victory over an

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

incumbent judge, particularly where the donations were temporally close to decision in which the donor was a party.

This case involves not an election, but an appointment, where any of the Defendant judges could exercise a potential veto over Judge Rogers' appointment. It makes no difference if she believes that could occur or not. Under §455(a), it is sufficient if a neutral observer might suspect that Judge Rogers could be so influenced. *See Liljeberg, supra.*. Under Caperton, the fact that Judge Rogers issued her order three days after Judge Berzon announced she would take senior status would raise doubts in any reasonable informed observer's mind about Judge Rogers' impartiality, suspecting that she rushed out the order to ensure that the Defendants were not displeased with her.

### C. Judge Rogers Repeated Plagiarism of False Statements of Fact is in and of Itself Grounds for Recusal

In *Liteky, supra*, the Supreme Court held that judicial statements and actions alone, without attribution to an extrajudicial source, will sometimes, but not usually, justify disqualification under §455(a). One of the situations where this almost-never standard is satisfied is where a judge's ruling plagiarizes the statements of law or fact in a party's brief, rules in favor of that party, and the statements are judicially noticeable as false or fraudulent. As Circuit Judge Easterbrook wrote,

> From time to time district judges extract portions of briefs and use them as the basis of opinions. We have disapproved this practice because it disguises the judge's reasons and portrays the court as an advocate's tool, even when the judge adds some words of his own. *E.g., Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 313-14 (7th Cir.1986); *In re X-Cel, Inc.,* 776 F.2d 130 (7th Cir.1985).
>
> *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (1990).

Judge Rogers repeatedly plagiarized the brief, and material statements about the legal background were materially false. Any reasonable person would suspect that she is the tool of the DOJ and its clients, who are fellow judges in this Circuit.

1

2

### D. Judge Rogers' Explicit Statement of Pre-Judging Post-Judgment Motions is Grounds for Recusal

3

Another example where a judge can be disqualified solely from her words is where the judge

4

pre-judges the case or a motion.

5

Biases stemming from facts gleaned during judicial proceedings themselves must be particularly strong in order to merit recusal. "A favorable or unfavorable predisposition can ... deserve to be characterized as `bias' or `prejudice' [when] even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Liteky,* ___ U.S. at ___, 114 S.Ct. at 1155. In such situations, then, the court's actions must "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at ___, 114 S.Ct. at 1157. By the statutory language itself, though, section 455(a) mandates an objective rather than a subjective inquiry. *See Bertoli,* 40 F.3d at 1412 ("The judge does not have to be subjectively biased or prejudiced, so long as he *appears* to be so.") (*quoting Liteky,* ___ U.S. at ___, 114 S.Ct. at 1156 n. 2) (emphasis in original); *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 162 (3d Cir.1993) ("[T]he public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted", requires that "justice must satisfy the appearance of justice.") (*quoting In re Asbestos Litig.,* 977 F.2d 764, 776 (3d Cir.1992)); *In re Int'l Business Mach. Corp.,* 45 F.3d 641, 643 (2d Cir.1995). Therefore, if a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality" under the applicable standard, then the judge must recuse. *In re Larson,* 43 F.3d 410, 415 (8th Cir.1994) (*quoting Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980)).

6

7

8

9

10

11

12

13

14

15

16

17

*United States v. Antar,* 53 F.3d 568, 574 (3rd Cir. 1995).

18

In *Antar,* at the end of the criminal prosecution of famed discounter "Crazy Eddie", the

19

district court judge stated that his goal was to ensure restitution of the public.  The Third Circuit

20

held that this statement, when combined with the Court's rulings, created sufficient grounds for

21

finding that the judge should have recused:

22

We reject the implications of the government's argument — that because the statement occurred after the trial, it cannot form the basis of an allegation of bias during the trial. Suppose, for instance, that at sentencing the district judge informs a defendant that throughout the trial his object had been to see the defendant behind bars. A reasonable observer in such a scenario would have serious reason to question whether prior rulings in the case were based on impartial considerations or on the judge's stated goal. The fact that the judge's motivation came to light only after the conclusion of the trial would be of no moment....

23

24

25

26

....

27

We nevertheless consider whether we should read the judge's words as meaning something other than what they say on their face, particularly where, as

28

MEMORANDUM OF POINTS AND AUTHORITIES

here, the judge is a distinguished and respected jurist whose career has demonstrated anything but unfairness to litigants. Thus, the government at oral argument before us contended that the district judge really was referring to the civil SEC proceeding rather than the criminal proceeding. Or, we could imagine that the district judge made an unfortunate and isolated statement — a stray remark — after the defendants had been convicted and during a lengthy and partly spontaneous colloquy during a sentencing hearing. In this latter interpretation, the judge would be pointing out his recognition that from the beginning of the trial it had been clear that the public had been defrauded and that after conviction it became clear that it was the defendants who had perpetrated the fraud.

…

But in determining whether a judge had the duty to disqualify him or herself, our focus must be on the reaction of the reasonable observer. If there is an appearance of partiality, that ends the matter. *Haines v. Liggett Group Inc.,* 975 F.2d 81, 98 (3d Cir.1992); Lewis v. Curtis, 671 F.2d 779, 789 (3d Cir.) ("Impartiality and the appearance of impartiality in a judicial officer are the sine qua non of the American legal system."), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). That being the case, we must be careful not to rewrite what  the judge said and render unreasonable the clearest and most obvious reading of the language. After all, we are reviewing a record, and when all is said and done, the transcript of the proceeding speaks for itself.....

Our conclusion is further compelled by the particular circumstances of the case, combined with certain of the judge's comments and decisions during the trial, which when read in light of the remark at sentencing, make a reasonable observer even more concerned that the judge had an improper goal.

*Antar, supra,* at 576-77.

Here, in her April 12, 2021 order, Judge Rogers explicitly stated that Plaintiff's only remedy was an appeal, which excluded any possibility of her granting post-judgment motions. This ruling is particularly troubling because she stubbornly refuses to acknowledge that Judge Rogers' Statement (as defined above) concerning the State Bar Court proceedings was and is false (*see* Request for Judicial Notice), and she has refused to consider arguments made by Plaintiff or grant sufficient space or oral argument to make his points.

### E. Judge Rogers's Conduct Exhibits Pervasive Bias

Judge Rogers' rulings and actions discovered, taken together, are over the line, and demonstrate pervasive bias in favor of the Defendants.  The particular conduct which is far, far over the line is her April 9, 2021 plagiarism of false statements of material facts about the underlying legal proceedings, and her April 12, 2021 order rejecting the proof of the inaccuracy

MEMORANDUM OF POINTS AND AUTHORITIES

of Defendant's representations and stated  that Plaintiff's only remedy was appeal—post-judgments motions were pointless.

### F. If Judge Rogers Denies the Motion, she Must Make the Requested Disclosures

If Judge Rogers denies the motion to recuse, she must justify her conduct by making the requested disclosures of the following:

1.  Her personal relationships with any of the Defendants;

2.  All circumstances in which she has worked with or alongside any Defendant;

3.  All communications she has received about her potential appointment to the Ninth Circuit Court of Appeals;

4.  All communications she has made about her potential appointment to the Ninth Circuit Court of Appeals;

5.  All third-party statements she is aware of regarding her chances to be appointed to the Ninth Circuit Court of Appeals.

## IV.    CONCLUSION

Judge Rogers' judicial plagiarism in her April 9, 202 order, her refusal to acknowledge its falsity in her April 12, 2021 order when pointed out, her refusal to carefully read Plaintiff's Complaint or even the Exhibits attached to Defendants' own Motion to Dismiss, her refusal to acknowledge the cases cited by Plaintiff requiring her disclosure even if she believes she is required to recuse, her efforts to cut off Plaintiffs' ability to fully oppose the motion to dismiss, her threat of sanctions if proper arguments were made, and her statement in the April 12, 2021 order  that Plaintiff had no chance with post-judgment motions are sufficient to require recusal under §455(a).  However, when combined with her financial interest in ruling for the Defendants so that she has an unimpeded path to the Ninth Circuit, the requirement to recuse easily reaches the higher due process standard of Caperton, supra.

Dated:  April 21, 2021

By: _____/s/ Cyrus Sanai_____
　　　　CYRUS SANAI
　　　　Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES