Cyrus M. Sanai, SB#150387
SANAIS
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, California, 90210
Telephone: (310) 717-9840
cyrus@sanaislaw.com

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

| | | |
|---|---|---|
| CYRUS SANAI, an individual, | ) | Case No.  19-CV-08162-YGR |
| Plaintiff, | ) | **REPLY REGARDING MOTION PURSUANT TO 28 U.S.C. §455 FOR (1)  RECUSAL OR, IN THE ALTERNATIVE,  (2) DISCLOSURE BY JUDGE OF RELEVANT INFORMATION** |
| vs. | ) | |
| ALEX KOZINSKI, in his personal capacity; CATHY CATTERSON, in her personal capacity; THE JUDICIAL COUNCIL OF THE NINTH CIRCUIT, an administrative agency of the United States; MOLLY DWYER, in her official capacity; SIDNEY THOMAS, in his official and personal capacities; PROCTOR HUG JR., in his personal capacity; M. MARGARET MCKEOWN, in her personal capacity; RONALD M. GOULD, in his personal capacity; JOHNNIE B. RAWLINSON, in her personal capacity; AUDREY B. COLLINS, in her personal capacity; IRMA E. GONZALEZ, in her personal capacity; ROGER L. HUNT, in his personal capacity; TERRY J. HATTER JR., in his personal capacity;  ROBERT H. WHALEY, in his personal capacity; THE JUDICIAL COUNCIL OF CALIFORNIA, an administrative agency of the State of California; and DOES 1-10, individuals and entities whose identities and capacities are unknown; | ) | Complaint Filed:  December 17, 2019 |
| Defendants. | ) | |

# TABLE OF CONTENTS OF MEMORANDUM OF POINTS AND AUTHORITIES

I.      THE PROCEEDINGS IN THIS CASE SINCE THE FILING OF THE RECUSAL MOTION ................................................................................................ 2

II.     THE ALTERNATIVE REQUEST FOR DISCLOSURE BY JUDGE ROGERS IS NOW A CONJUNCTIVE REQUEST ................................................ 3

III.    JUDGE DONATO'S INACTION ON THE MOTION FOR DISCLOSURE BY HIM PROHIBITS HIM FROM ADDRESSING THE PENDING MOTION UNTIL HE DISCLOSES OR DISCOVERY IS HELD. ................................................... 4

IV.     PUBLISHED CIRCUIT APPELLATE LAW CONFIRMS THAT JUDICIAL PLAGIARISM OF PARTY MISREPRESENTATIONS CONSTITUTES THE KIND OF JUDICIAL RULINGS THAT REQUIRE DISQUALIFICATION. ................. 4

V.      THE DEFENDANTS DO NOT ADDRESS JUDGE ROGERS'S PRE-JUDGMENT OF THE POST-JUDGMENT MOTIONS ............................................. 6

VI.     THE CASE LAW CITED BY DEFENDANTS REGARDING SUPPORT OF A NOMINATION IS NOT RELEVANT AND  LONGER GOOD LAW SINCE *CAPERTON*. .................................................................................................... 7

VII.    THE COURT SHOULD ORDER DISCOVERY AND DECIDE THE PENDING MOTIONS AFTER COMPLETION. ............................................... 11

VIII.   CONCLUSION. ..................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813 (1986) ............................................................. 9
*Bright v. Westmoreland County,* 380 F.3d 729 (3d Cir. 2004) .............................................. 5
*Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868 (2009) .................................... 7, 9, 11
*Denardo v. Municipality of Anchorage,* 974 F.2d 1200 (9th Cir. 1992).......................... 8, 10, 11
*DiLeo v. Ernst & Young,* 901 F.2d 624 (1990) ..................................................................... 5
*Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847 (1988) ................................ 12
*Liteky v. United States,* 510 U.S. 540 (1994) ....................................................................... 6
*Nat. Abortion Fed. v. Center for Medical Progress,* 257 F.Supp.3d 1084 (N.D.CA 2017) ............ 2
*Tumey v. Ohio,* 273 U.S. 510 (1927)................................................................................... 11
*United States v. Antar,* 53 F.3d 568 (3rd Cir. 1995) ........................................................... 7
*United States v. Evans,* 262 F.Supp.2d 1292 (D. UT 2003)................................................ 11
*Warner v. Global Natural Resources PLC,* 545 F.Supp. 1298 (S.D.OH 1982)................... 8

**Statutes**

28 U.S.C. §455  ....................................................................................................... 2, 3
28 U.S.C. §455(a) .................................................................................................... 2

**Other Authorities**

"65 Names to Watch When Biden Picks Circuit Judges", *law360.com*, January 3, 2021, found at
     www.law360.com/articles/1338187/65-names-to-watch-when-biden-picks-circuit-judges....... 16
A. Lancaster, "Another 9th Circuit Judge 'Goes Senior,' Creating Second Vacancy on Court",
     *law.com*, April 6, 2021 found at https://www.law.com/therecorder/2021/04/06/another-9th-
     circuit-judge-goes-senior-creating-second-vacancy-on-court/.................................................... 16
Administrative Office of the Courts, "Judicial Compensation", uscourts.gov, found at
     www.uscourts.gov/judges-judgeships/judicial-compensation ..................................................... 17
Hon. D. Feinstein, "press release", July 13, 2011, found at
     https://www.feinstein.senate.gov/public/index.cfm/press-releases?ID=BA9E6680-3C53-46EB-
     9AC4-8B1BBFE6C621 ..................................................................................................... 21
P. Reyes, "'Unacceptable': Latino groups push Biden to nominate more Hispanic federal judges",
     *nbcnews.com*, April 6, 2021 found at https://www.nbcnews.com/news/unacceptable-latino-
     groups-push-biden-nominate-hispanic-federal-judges-rcna594................................................... 16
Y. Gonzalez Rogers, Questionnaire for Judicial Nominees, found at
     www.judiciary.senate.gov/imo/media/doc/YvonneGonzalezRogers-PublicQuestionnaire.pdf.  21

**Rules**

Fed. R. Civ. P. 59 ................................................................................................................ 15
Fed. R. Civ. P. 60 ................................................................................................................ 15
L.R. 7-3 ............................................................................................................................... 7

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      THE PROCEEDINGS IN THIS CASE SINCE THE FILING OF THE RECUSAL MOTION**

Plaintiff's motion requested, pursuant to 28 U.S.C. §455, that Judge Yvonne Gonzales Rogers either recuse herself pursuant to 28 U.S.C. §455(a), or in the alternative, provide written disclosures pursuant to 28 U.S.C. §455 of specific facts.  The motion was accompanied by a request for judicial notice.  Docket Nos. 77-78.  The motion was directed to Judge Rogers on the assumption that she would address it; unlike, for example, the Central District of California, there is no local rule in place providing that 28 U.S.C. §455 motions are transferred to a different judge.

Judge Rogers referred the motion and request for judicial notice to be heard by another judge, Docket No. 79.   According to a published decision authored by Judge Donato, the judge to whom this motion was assigned, transfer to another judge is permitted.  See *Nat. Abortion Fed. v. Center for Medical Progress,* 257 F.Supp.3d 1084, 1088 (N.D.CA 2017). In a rather bizarre coincidence, Judge Donato was again assigned a disqualification motion that he was not required to hear.

After the motion was referred to Judge Donato, Plaintiff filed a second ex parte motion for disclosure by both Judge Rogers and Judge Donato.  Docket No. 80.  Judge Rogers filed an order stating that just as there was nothing to disclose on March 20, 2020, there continued to be nothing to disclose.  *See* Order, Docket No. 81.

Plaintiff then filed an administrative motion to shorten time on a motion to take discovery—depositions or depositions by written question—against Judge Rogers, certain of the Defendants, and if Judge Donato did not disclose the matters requested, Judge Donato.  *See* Docket No. 82. This was followed by the noticed motion to take discovery itself. Docket No. 84.

Defendants filed a four-page opposition to the motion for recusal, but which contains only two pages of argument.  Docket No. 83.

On May 10, 2021, Plaintiff filed two timely post-judgment motions to vacate the final judgments in this action, Docket Nos. 85-86.  The first motion filed is a Fed. R. Civ. P. 60(b)(6) motion to vacate the judgments and the order of dismissal based on Judge Rogers' refusal to recuse and disclose.  The second motion is primarily under Fed. R. Civ. P. 59(e), and requests that

1   the judgment be altered to vacate it due to manifest legal errors on the merits and because the

2   failure to recuse rendered the proceedings manifestly unjust.  In addition, one of Judge Rogers's

3   errors on the merits, her failure to correctly address or analyze the issues concerning Count 6 (the

4   wrongful use of state administrative proceedings), overlaps with one of the grounds for recusal:

5   rather than reading the complaint's allegations concerning the state bar proceedings, Judge

6   Rogers' plagiarized Defendants' false characterization of the proceedings in her order, which

7   demonstrated her lack of independent judgment.

8       The new procedural context is not discussed the Defendants' opposition; indeed, it does not

9   make any meaningful discussion of the facts of this case at all.  Accordingly, it false on Plaintiff

10  to address how the changed context might affect the disposition of this motion.

11  **II.      THE ALTERNATIVE REQUEST FOR DISCLOSURE BY JUDGE ROGERS IS**

12  **NOW A CONJUNCTIVE REQUEST**

13      Plaintiff requested a disjunctive or alternative disclosure of facts by Judge Rogers for the

14  simple reason that if Judge Rogers, who knows the facts that Plaintiff requested be disclosed,

15  chose to recuse, then disclosure of the facts pursuant to §455 is not necessary.  However, the

16  unanticipated transfer of the motion to Judge Donato changed this context; he does not know the

17  facts that Plaintiff requested be disclosed as a matter of personal knowledge; even if Judge Rogers

18  recounted them in private to Judge Donato, the facts would be ex-parte hearsay testimony.

19      For this reason, Plaintiff separately filed a motion for disclosure, Docket No. 80, which Judge

20  Rogers again denied, again on the grounds that she maintains there is nothing for her disclose.

21  This is clearly wrong.  Under the authority repeatedly cited to her, Judge Rogers was clearly

22  required to notify Plaintiff,  inter alia, that she had worked with defendant Judge Gould, that she

23  had been publicly identified as being a candidate for promotion by the Biden Administration to

24  the Ninth Circuit, and further that Circuit Judge Berzon announced that she was taking senior

25  status, opening up a position for Judge Rogers to be appointed.  She should also have pointed out

26  that Hispanic advocacy organizations, including one organization to which she belongs, the

27  Hispanic National Bar Association, is lobbying to have her or another Hispanic judge appointed

28  to the position opened up by Judge Berzon.  *See* Y. Gonzalez Rogers, Questionnaire for Judicial

REPLY REGARDING MOTION FOR RECUSAL OR DISCLOSURE

Nominees, found at www.judiciary.senate.gov/imo/media/doc/YvonneGonzalezRogers-PublicQuestionnaire.pdf (showing membership in Hispanic National Bar Association);  P. Reyes, "'Unacceptable': Latino groups push Biden to nominate more Hispanic federal judges", *nbcnews.com*, April 6, 2021 found at https://www.nbcnews.com/news/unacceptable-latino-groups-push-biden-nominate-hispanic-federal-judges-rcna594 (discussing lobbying groups pushing for immediate appointment of Hispanics to the federal bench).

Judge Rogers did not purport to address the motion for disclosure before Judge Donato; for this reason, he should ORDER immediate disclosure of the facts.

## III.   JUDGE DONATO'S INACTION ON THE MOTION FOR DISCLOSURE BY HIM PROHIBITS HIM FROM ADDRESSING THE PENDING MOTION UNTIL HE DISCLOSES OR DISCOVERY IS HELD.

Judge Rogers was not the only Judge for whom Plaintiff requested disclosure; Plaintiff also requested it of Judge Donato.  *See* Docket No. 80.  So far Judge Donato has taken no action. Since the filing of the motion, Plaintiff has learned that Judge Donato was a clerk for one of the Defendants, the late Circuit Judge Hug.  That's definitely something which he should have disclosed.  Even though Judge Hug is dead, those clerks who maintained personal friendships have a personal interest in preventing his posthumous reputation from being dragged down to the level of the late sexually-harassing, misogynistic Stephen Reinhardt.  Whether Judge Donato remained a friend of Judge Hug around the time of his death is a matter that required disclosure, and if disclosure is not made, discovery.

## IV.   PUBLISHED CIRCUIT APPELLATE LAW CONFIRMS THAT JUDICIAL PLAGIARISM OF PARTY MISREPRESENTATIONS CONSTITUTES THE KIND OF JUDICIAL RULINGS THAT REQUIRE DISQUALIFICATION.

Defendants argue that
> "Plaintiff alleges that the Court "repeatedly plagiarized [Defendants'] brief," Mot. 21. Yet this grievance is no more than disagreement with how the Court disposed of Plaintiff's Complaint and granted Defendants' Motion to Dismiss.

Opposition at 2:5-9

The Defendants ignore the published case law that state that judicial plagiarism is

-4-

exactly the kind of conduct which raises due process concerns about impartiality.

> From time to time district judges extract portions of briefs and use them as the basis of opinions. We have disapproved this practice because it disguises the judge's reasons and portrays the court as an advocate's tool, even when the judge adds some words of his own. *E.g., Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 313-14 (7th Cir.1986); *In re X-Cel, Inc.,* 776 F.2d 130 (7th Cir.1985).

*DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (1990).

The Defendants do not acknowledge the multiple appellate opinions that have stated that judicial plagiarism raises serious due process concerns as to whether the judge in question was exercising impartial, independent judgment.  Where the copying demonstrates such lack of independent judgment, appellate courts have held that the district courts violate due process.

An excellent example is *Bright v. Westmoreland County,* 380 F.3d 729 (3d Cir. 2004).  There the District Court indicated in a status conference that is was considering dismissing the plaintiff's case based on an unpublished District Court decision.  The defendant attorneys then submitted …[A] proposed opinion and order of court….

> At our request, counsel for the appellees supplied us with a copy of the proposed memorandum opinion and order that they had submitted to the District Court. This proposed opinion is nearly identical to the opinion filed by the District Court. Other than minor grammatical and stylistic edits, the District Court made only two substantive changes. First, in the analysis section of the opinion, the District Court struck a single sentence from the appellees' proposed opinion. Second, the District Court added a section that dismissed the claims against Koschalk for lack of jurisdiction.

> **Importantly, the District Court did not substantively alter the section in the proposed opinion that dismissed Bright's state law claims based on the Pennsylvania Political Subdivisions Tort Claims Act ("P.S.T.C.A."). 42 Pa.C.S. § 8541 et seq. This is significant because nowhere in appellees' motions to dismiss do they argue that Bright's state law claims are barred under the P.S.T.C.A.** The District Court, however, adopted this section of the appellees' proposed opinion without any real modification or explanation, again excepting minor stylistic changes.

> Bright complains about the District Court's procedure, stating that "[i]t is hard to reconcile this evident overreaching with **plaintiff's reasonable expectations as a litigant for a fair and independent judicial review of his claim.**" Appellant's Brief at n. 2. We agree and will reverse…..

*Bright, supra,* at 731 (footnotes omitted, bold emphasis added).

Not all cases of judicial plagiarism result in a reversal for absence of an appearance of

impartiality.  The factual showing that gets an appellant over the line is where the judge's opinion includes errors or statements that a reasonable observer would suspect could not have been the product of an exercise of independent judgment on an impartial basis.   Thus where the judge inserts manifestly erroneous factual statements or legal and factual contentions never properly considered by the court, sufficient appearance of an absence of an appearance of impartiality is shown.

Accordingly, judicial plagiarism is exactly the kind of judicial conduct that federal courts have found raises concerns of absence of impartiality where the plagiarism incorporates obvious falsehoods, unlitigated matters, and similar improper content.  Where the copying shows an abdication of a judicial fact-finding process (as it manifestly does here), disqualification is required.  The Defendants provide nothing to refute this.

## V.      THE DEFENDANTS DO NOT ADDRESS JUDGE ROGERS'S PRE-JUDGMENT OF THE POST-JUDGMENT MOTIONS

Plaintiff's motion to recuse pointed out that in *Liteky v. United States,* 510 U.S. 540 (1994), the Supreme Court wrote:.

It is wrong in theory, though it may not be too far off the mark as a practical matter, to suggest, as many opinions have, that "extrajudicial source" is the only basis for establishing disqualifying bias or prejudice. **It is the only common basis, but not the exclusive one, since it is not the exclusive reason a predisposition can be wrongful or inappropriate. A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment. (That explains what some courts have called the "pervasive bias" exception to the "extrajudicial source" doctrine. *See, e. g., Davis v. Board of School Comm'rs of Mobile County,* 517 F. 2d 1044, 1051 (CA5 1975), cert. denied, 425 U. S. 944 (1976).)**

With this understanding of the "extrajudicial source" limitation in §§ 144 and 455(b)(1), we turn to the question whether it appears in § 455(a) as well…
….
For all these reasons, we think that the "extrajudicial source" doctrine, as we have described it, applies to § 455(a). **As we have described it, however, there is not much doctrine to the doctrine. The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a necessary condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a**

**sufficient condition for "bias or prejudice" recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" factor, than of an "extrajudicial source" doctrine, in recusal jurisprudence.**

*Liteky, supra,* 545-555 (bold emphasis added).

One kind of statement that inevitably results in disqualification show pre-judgment, which is prejudice in its original and fundamental sense.  Most of the time, pre-judgment is shown by initial statements of the Court made prior to the judge having reviewed the law or facts.  However, there is one critical case, *United States v. Antar,* 53 F.3d 568 (3rd Cir. 1995) where the judge's statement at the end of the case, combined with his rulings, showed an appearance of prejudice.

The Defendants don't discuss Judge Rogers's pre-judgment of the post-judgment motions, because it dispositively demonstrates the sort of expressed bias that results in a judge getting kicked off a case.  She explicitly stated in a ruling that Plaintiff had no post-judgment motion recourse to reverse her order of dismissal:

> To the extent that Sanai has issue with the Order and the substance therein, the proper procedure is to appeal this Order to the Ninth Circuit Court of Appeals for a review of the Order at Docket Number 72.

April 12, 2021 Order, Docket No. 75 at 1:16-18.

Plaintiff has such recourse, and he has exercised it.  *See* Docket Nos. 85-86.  Judge Rogers's statement demonstrates pre-judgment of these two motions.  She cannot continue on the case.

## VI.    THE CASE LAW CITED BY DEFENDANTS REGARDING SUPPORT OF A NOMINATION IS NOT RELEVANT AND  LONGER GOOD LAW SINCE *CAPERTON.*

Defendants argue that

> as the Ninth Circuit has observed, even when a party has supported or opposed a presiding judge's actual judicial nomination (which Plaintiff here has not alleged, let alone established), courts have "uniformly concluded" that recusal is not required. *Denardo v. Municipality of Anchorage,* 974 F.2d 1200, 1201 (9th Cir. 1992) (*citing Warner v. Global Natural Resources PLC,* 545 F. Supp. 1298,

1301-02 (S.D. Ohio 1982) (party's support for judge's nomination does not
require recusal)).

Opposition at 2:11-16

The Defendants, as usual, do not tell the truth.  What *Denardo* actually states is as

follows:

> DeNardo apparently sent a letter to the Senate Judiciary Committee
> opposing Judge Singleton's nomination to the bench. This fact alone does not
> require recusal. Such a letter is probative of DeNardo's dislike for Judge
> Singleton, not the other way around. *King v. United States,* 576 F.2d 432, 437
> (2nd Cir.), cert. denied, 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978);
> *United States v. Wolfson,* 558 F.2d 59, 62 (2nd Cir.1977). Courts which have
> considered whether testimony regarding a judicial nomination mandates recusal
> have uniformly concluded that it does not. *E.g. United States v. Helmsley,* 760
> F.Supp. 338, 342-43 (S.D.N.Y.1991); *see also Warner v. Global Natural
> Resources PLC,* 545 F.Supp. 1298, 1301-02 (S.D.Ohio 1982) (party's support for
> judge's nomination does not require recusal). Because DeNardo has presented no
> evidence that his letter had any effect on the nomination process or on Judge
> Singleton's attitude towards him, he has not met his burden of demonstrating facts
> warranting recusal. *See Helmsley,* 760 F.Supp. at 343 (facts that counsel was
> alone in opposing judge's nomination and that judge did not respond to criticism
> warranted conclusion that judge was not biased against litigant or counsel).

*Denardo v. Municipality of Anchorage,* 974 F.2d 1200, 1201 (9th Cir. 1992).

*Denardo* addresses the question of whether a person's **past opposition** to the appointment of

a federal judge requires recusal.  That's not the case here; Plaintiff has not opposed Judge

Rogers's potential nomination, and her nomination has not been announced

The Defendants also cite a single case addressing the question of whether support of a

judge WHO HAS BEEN APPOINTED requires recusal.  The problem with the case cited

by Defendants is that the facts involved support that the judge in question never knew

about and which occurred years before the case at issue:

> Attached to plaintiff's response is an affidavit signed by Marvin Warner, stating
> that he and I have had only limited contacts over the years, that he was never a
> client of my former law firm, and that he never had any business relationships, or
> any intimate or personal relationships with the undersigned. He stated that his
> support of my nomination to the Bench was prompted by a call from Senator
> Howard Metzenbaum who asked Mr. Warner to contact Senator Howard Hefflin
> of Alabama, after Mr. Warner indicated to Senator Metzenbaum his opinion that I
> would make a good member of the Court. Mr. Warner stated that I knew nothing
> about his support at the time.

*Warner v. Global Natural Resources PLC,* 545 F.Supp. 1298, 1300 (S.D.OH 1982).

Informal, non-public support of a judge's appointment that the Judge did not know about at the

time, and that is raised years after the appointment of the Judge, is completely different from the situation at present, where the Defendants **at this moment** have the power to blackball Judge Rogers.  Past support is merely a question of friendship.  However, when the judge's ruling could result in blackballing (or a shift in support) of the promotion, then the issue changes to one of financial interest.  Where a financial interest involved, the required showing for disqualification drops substantially.  Thus in  *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813 (1986), the financial interest consisted of the possibility that former Alabama Supreme Court Justice Embry's decision on insurance coverage in one case would advantage him in his own personal litigation against different insurance companies.  In *Aetna*, the advantages to the Supreme Court judge were not liquidated and actual, but potential:

> Justice Embry's opinion for the Alabama Supreme Court had the clear and immediate effect of enhancing both the legal status and the settlement value of his own case.

*Id.* at 824.

The advantage obtained by Judge Rogers's in deciding for the Defendants is similar. Her "legal status" in the eyes of the Ninth Circuit Judges and other current and former members of the Judicial Council is enhanced, and  her future potential income stream (which would be boosted upon appointed to the Ninth Circuit Court of Appeals) is increased.  That is all the financial interest that need be shown.

Moreover, the Ninth Circuit's 1992 view that support for a judge to obtain an appellate position might never qualify as grounds for recusal ceased to be good law (if it ever was) after *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009). In *Caperton,* the United States Supreme Court held that public support for a judge (by financial contributions and public support) was grounds for recusal, particularly given the temporal proximity of the support of the judge and the case against the supporter.

The issue here is not past support or opposition of a judge to a position the judge successfully obtained years ago; the issue is whether Judge Rogers's potential nomination now and in the next three years would lead a person to suspect that might be biased **by the threat, explicit or**

REPLY REGARDING MOTION FOR RECUSAL OR DISCLOSURE

**implicit,** of being blackballed by judges on the Ninth Circuit, particularly given the fact that she issued the order of dismissal **three days** after a position opened after sitting on the motion for more than three months.  The temporal proximity, and the fact that neither Judge Rogers nor anyone else has been nominated on April 9, 2021, are critical facts that differentiate this situation from scenarios where past support was unsuccessfully raised as an issue.  This has been recognized by judges that have cited *Denardo*:

> Because of reasons such as these, "[C]ourts which have considered whether, testimony regarding a judicial nomination mandates, recusal have uniformly concluded that it does not."for example, in a case involving a similar motion', a federal district court judge in the eastern district of New York did not recuse where A criminal defense attorney alleged that he and other defense attorneys had "openly and vehemently opposed the nomination. The judge found the argument that an attorney's opposition to a nomination required recusal "particularly unpersuasive." Similarly, another judge in the same district refused to recuse in a case involving Alan Dershowitz as a criminal defense attorney where Mr. Dershowitz had sent negative letters to the senate judiciary committee and directly criticized the judge in an opinion in the New York times.

> The reasons judges decline to recuse in such circumstances are easy to understand. There is a "well established judicial rejection of a rule that would permit a litigant or an attorney to disqualify a judge by criticizing him."An attorney cannot create his own grounds for recusal, moreover, if opposition to manipulate the court. By selectively sending letters of opposition to the senate judiciary committee, they could pick and choose the judges before whom they appear. Compounding the problem, litigants who wish to avoid appearing before any particular judge could simply hire a lawyer who had opposed the judge's nomination.

> Nor would the scope of the problem he limited to attorneys who had sent letters opposing a judicial nomination. If the appearance of bias against an attorney was sufficient for recusal, then "In favor of an attorney would qualify as well.  If judges were to recuse because of letters in opposition to their nominations, then attorneys might be reluctant to provide letters in support of a nomination lest the judge they supported be barred from ever hearing their cases.

> The tenth circuit has instructed repeatedly institutes that the recusal statutes are not "intended to bestow veto power over judges or to be used as a judge shopping device."  Even death threats communicated directly to a judge by a criminal defendant appearing before him have not required recusal. In fact, in such cases "it may normally be presumed that one of the defendant's motivations is to obtain recusal."  To recuse here on the basis of defense counsel's motion would inevitably lead to the forum shopping that the tenth circuit was warned against.

-10-

**It is also relevant to note that the events giving rise to the alleged appearance of partiality all took place some time ago. The letter at the center of the motion is nearly two years old.** The letter references academic writings that are more than five years old. Clearly, at some point, even a genuine appearance of partiality will begin to fade away. The matters alleged in defense counsel's motion are disappearing into the past.

*United States v. Evans,* 262 F.Supp.2d 1292, 1296 (D. UT 2003) (citations, including to *Denardo, supra,* omitted, bold emphasis added.)

Here, Plaintiff has not created the situation that gives rise to a question of financial interest in the outcome of the case.  It it the product of the election of Joseph Biden and the public pressure for him to nominate Hispanic judges to the Court of Appeals by organizations the Democrats are beholden to, such as the the organizations to which Judge Rogers belongs.  To the extent anyone has created this problem it is Judge Rogers due to her membership in Hispanic legal lobbies.

Once a judge has been appointed, the issue of past support becomes akin to the issue of personal friendship, at least as to federal judges.   The fact that a former supporter turns on the judge because the judge rules against the supporter does not imperil the judge's current financial prospects.

However, where the nomination and appointment of the judge to a higher, better paying position is possible, but not yet occurred, the judge is objectively subject to a condition which might "lead him not to hold the balance nice, clear and true between the State and" the private party.  *Caperton, supra,* at 879, quoting *Tumey v. Ohio,* 273 U.S. 510, 532 (1927).

That is the critical factual difference between this case and the cases cited by the Defendants; if Judge Rogers rules against them, her front-running position to replace Judge Berzon would be imperiled, a reasonable person would suspect.  That's why *Caperton* applies here, and not *Denardo* and *Warner.*

## VII.    THE COURT SHOULD ORDER DISCOVERY AND DECIDE THE PENDING MOTIONS AFTER COMPLETION.

Plaintiff has pushed forward several strong grounds for recuals, but the strongest is the issue of Judge Rogers's financial interest.  The Defendants only have pre-*Caperton* case law to cite. Moreover, the cases relied upon did not involve judicial financial interest, but potential friendship

-11-

1   or positive or negative feelings, not the possibility of losing out on a promotion.

2       The Defendants attempt to rebut this by stating:

3
4           Finally, Plaintiff points to news reports about potential judicial nominations and
            advances a variety of baseless and conspiratorial speculations that Defendants in
5           this case exerted their influence by threatening to somehow scuttle a hypothetical
            Ninth Circuit nomination.
6   Opposition, Docket No. 83, at 6-8.

7       Once again, this is dishonesty of the highest order.  Plaintiff never stated that any such

8   conspiracy existed, or that any such influence was actually exerted.  What Plaintiff wrote was:

9
10              A judge must disqualify himself even if he was previously unaware of the
            facts giving rise to an appearance of the absence of impartiality.  As the United
11          States Supreme Court held:
                    a violation of § 455(a) is established when a reasonable
12                  person, knowing the relevant facts, would expect that a justice,
                    judge, or magistrate knew of circumstances creating an appearance
13                  of partiality, **notwithstanding a finding that the judge was not
                    actually conscious of those circumstances**.
14          *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 850 (1988).
            ….
15                  This case involves not an election, but an appointment, where **any of the
16          Defendant judges could exercise a potential veto over Judge Rogers'
            appointment.  It makes no difference if she believes that could occur or not.
17          Under §455(a), it is sufficient if a neutral observer might suspect that Judge
            Rogers could be so influenced.**  *See Liljeberg, supra.*  Under *Caperton,* the fact
18          that Judge Rogers issued her order three days after Judge Berzon announced she
            would take senior status would raise doubts in any reasonable informed
19          observer's mind about Judge Rogers' impartiality, suspecting that she rushed out
            the order to ensure that the Defendants were not displeased with her.
20   Motion for Recusal, etc., Docket No. 77, at 16:3-8, 21:3-11.

21      The repeated mendacity of the Defendants is, as discussed below, a matter that requires

22   judicial attention.  But it also in this regard destroys the validity of the legal contentions.

23      The Defendants, resting on their straw-man assertions of what Plaintiff wrote—which are

24   objectively, judicially noticeably, a lie—then state that: "Plaintiff fails, however, to draw any

25   connection between these reports and his speculative scenarios such that he can establish any

26   plausible basis under which the Court's "impartiality might reasonably be questioned." 28 U.S.C.

27   § 455(a)."  Opposition, Docket No. 83 at 2:9-11.  The connection, however, is clearly articulated,

28

REPLY REGARDING MOTION FOR RECUSAL OR DISCLOSURE

and under *Liljeberg, supra,* it may be speculative if it is the kind of speculation that a reasonable person would engage in.

Nonetheless, if the Defendants believe that Plaintiff should be required to show a conspiracy, then Plaintiff must, as a matter of due process, have the opportunity to do so.  If if the evidence of a conspiracy is not necessary, it is certainly relevant and in the public interest to expose.  This means the Court should order the discovery requested in the pending motion, Docket No. 84, and delay ruling on this motion until after Plaintiff can submit the results of such discovery.  This information is not only relevant to this motion, but to the two pending post-judgment motions seeking to reverse the dismissal of this case.  This Court, the legal press, and the public, can then see how "speculative" Plaintiff's contentions are.

## VIII.    CONCLUSION.

Defendants do not address in their two pages of argument several of the contentions made by Plaintiff.  While they argue specific facts or actions do no show pervasive bias, they never address all of the facts shown by Plaintiff.  They also fail to cite, or discuss, Judge Rogers's current financial interest in ruling for the Defendants, choosing instead to cite cases involving past secret or public support or opposition of judges made by people who had no power to influence the nomination or appointment, where the motions were made when the judge was already appointed, had no risk of losing out on any job, and thus did not have a financial interest in the outcome of the case.  What the Defendants do, however, is continue their pattern lying about Plaintiff's contentions, what in the record of this case, and what was the record shown in the underlying cases.  It was Judge Rogers's adoption of Defendants' blatant misstatements that resulted in judicial plagiarism being elevated to a matter of due process.  Given this history, the Court should order oral argument on all motions to ensure that the Court does not fall for any of the Defendants' mendacity.

Dated:  May 12, 2021
By: _____/s/ Cyrus Sanai_____
                CYRUS SANAI
                    Plaintiff

REPLY REGARDING MOTION FOR RECUSAL OR DISCLOSURE