1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7     CYRUS SANAI,                            Case No.  19-cv-08162-YGR   (JD)
8                     Plaintiff,
9              v.                             ORDER RE MOTIONS FOR
                                              RECUSAL, DISCLOSURE, AND
10    ALEX KOZINSKI, et al.,                  DISCOVERY
11                    Defendants.             Re: Dkt. Nos. 77, 80, 84
12          Pro se plaintiff Cyrus Sanai is an attorney admitted to practice in California.  Since 2005,

13    he has filed a number of judicial misconduct complaints against former circuit judge Alex

14    Kozinski, who retired from the bench in December 2017 amid an inquiry into sexual harassment

15    allegations against him.  None of Sanai's efforts gained any traction.  He filed this lawsuit against

16    several federal and state judges and court officials who he believes are protecting Kozinski and

17    retaliating against Sanai for his advocacy.  The details of this record are stated in the order

18    dismissing the complaint.  *See* Dkt. No. 72 at 3-6.

19          Sanai has now added Judge Gonzalez Rogers to the list of judges he perceives to be biased.

20    She is presiding over this case, and in April 2021 dismissed Sanai's complaint with prejudice

21    against the judges, court personnel, and the Judicial Council of the Ninth Circuit, on judicial

22    immunity and other grounds.  *Id*. at 8-14.[1]  Judge Gonzalez Rogers entered a judgment, Dkt. No.

23    76, which left Sanai free to file a notice of appeal and raise any objections he might have to her

24    ruling in the normal course of appellate review.  Rather than following that path, Sanai filed a

25    motion for recusal or disclosure pursuant to 28 U.S.C. § 455 that asked Judge Gonzalez Rogers to

26    remove herself from the case for the appearance of bias, or to "justify" her refusal to recuse by

27

28    _____
      [1] A claim against the Judicial Council of California, a state court body, was dismissed without
      prejudice.  Dkt. No. 72 at 14-15.

United States District Court
Northern District of California

making certain "requested disclosures" about her alleged lack of impartiality.  Dkt. No. 77.  After that, he filed a motion to alter or amend judgment and for a "new trial," although no trial had been held.  Dkt. No. 85.  Sanai has also filed a request for discovery in connection with his recusal motion.  Dkt. No. 84.  Among other requests, Sanai seeks to depose Judge Gonzalez Rogers, and Circuit Judges Sidney Thomas, M. Margaret McKeown, Ronald Gould, and Johnnie B. Rawlinson, on topics "relevant to the issue of disqualification."  *Id.*

While Judge Gonzalez Rogers would have been well within rights to rule on the recusal request herself, *see National Abortion Federation v. Center for Medical Progress*, 257 F. Supp. 3d 1084, 1088 (N.D. Cal. 2017), she referred the recusal request for reassignment to another judge. Dkt. No. 79.  She also issued an order stating that she "again has no relevant information to share or to disclose pursuant to section 455."  Dkt. No. 81.

This Court drew the random reassignment of the recusal request.  Sanai filed a request for disclosures from the Court, Dkt. No. 80, and for a deposition in connection with a judicial clerkship served with one of the circuit judges Sanai named as a defendant here.  Dkt. No. 84.  He also appears to suggest that this Court should recuse itself on the same ostensible ground.  Dkt. No. 87 at 4.

The recusal requests are without any legal or evidentiary support, and are denied.  All requests for disclosures and discovery are also denied.

## DISCUSSION

## I.      THE REQUESTS RE THIS COURT

As an initial matter, Sanai hints, without clearly stating, that I should recuse myself under 28 U.S.C. § 455 from deciding the motion against Judge Gonzalez Rogers.  Assuming that he has made this request, it is denied.  Sanai has not identified a good reason for me to decline to hear this matter, which is a decision entrusted to my discretion.  *See Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 541 U.S. 913, 926-27 (2004) ("Since I do not believe my impartiality can reasonably be questioned, I do not think it would be proper for me to recuse.  That alone is conclusive[.]") (citation omitted).

United States District Court
Northern District of California

1    Sanai says that my service as a judicial law clerk to the Hon. Procter R. Hug, Jr., a former

2    United States Circuit Judge for the Ninth Circuit, is a source of bias.  I was a law clerk to Judge

3    Hug for one year immediately after graduating from Stanford Law School in 1988.  Judge Hug's

4    long and distinguished service on the Ninth Circuit ended with his retirement in November 2017,

5    and he passed away in October 2019.  These facts are said to be relevant because Sanai named

6    Judge Hug as a defendant in this lawsuit, even though he had passed away two months before

7    Sanai filed the complaint.  Sanai worries that I have an interest in protecting Judge Hug's

8    "posthumous reputation," which will skew my conclusions against Sanai.  Dkt. No. 87 at 4.

9    None of this makes any reasonable sense.  To start, Judge Hug is deceased, and so, as a

10   matter of law, he cannot be a defendant in this litigation.  A "party cannot maintain a suit on

11   behalf of, or against, or join, a dead person, or in any other way make a dead person . . . party to a

12   federal lawsuit."  *LN Mgmt, LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 955 (9th Cir.

13   2020).  There is nothing for me to protect because Sanai's lawsuit cannot result in a judgment

14   against Judge Hug.  In addition, nothing in this order could possibly affect Judge Hug's reputation

15   in any way.  Consequently, the fact that Judge Hug's name appears in the complaint is a nullity for

16   present purposes.

17   Because Sanai's recusal theory is untenable, the "disclosures" he requests are wholly

18   irrelevant.  Such disclosures are, in any event, not contemplated by 28 U.S.C. § 455.  Section

19   455(a) states that any United States judge "shall disqualify himself in any proceeding in which his

20   impartiality might reasonably be questioned," and Section 455(b) then lists specific circumstances

21   in which the judge must "also disqualify himself," including, for example, "[w]here he has a

22   personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts

23   concerning the proceeding."  As this makes clear, Section 455 is "directed to the judge, rather than

24   the parties," and it is intended to be "self-enforcing on the part of the judge."  *United States v.*

25   *Sibla*, 624 F.2d 864, 867-68 (9th Cir. 1980).  The statute consequently provides only that a judge

26   "should inform *himself* about his personal and fiduciary financial interests, and make a reasonable

27   effort to inform *himself* about the personal financial interests of his spouse and minor children

28   residing in his household."  28 U.S.C. § 455(c) (emphases added).  The only public disclosure

United States District Court
Northern District of California

1  contemplated by the statute is a voluntary one, in the inapposite context of a possible waiver by a

2  party.  *See* 28 U.S.C. § 455(e) ("Where the ground for disqualification arises only under

3  subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of

4  the basis for disqualification.").

5        Consequently, a litigant has no statutory right to demand any disclosures or discovery from

6  a judge under 28 U.S.C. § 455, a fact that Sanai in effect concedes.  *See* Dkt. No. 77 at 3.  There

7  are other strong reasons to bar such requests.  Judges resolve disputes every day in decisions that

8  explain the legal and evidentiary reasons for the outcomes.  If a litigant is unhappy with a

9  decision, she can appeal, which results in a second order that explains the reasons for the court's

10  conclusions.  At each stage, there necessarily will be parties who prevail and those who lose.  To

11  allow disgruntled litigants the right to pursue "discovery" from judges above and beyond what is

12  stated in their decisions would fundamentally undermine the courts and cause untold chaos in the

13  fair and efficient administration of justice.

14        This is not to say that the door is shut to all inquiry by a party in the recusal context.  There

15  may be room for some factual investigation, but only if relevant to the purposes of Section 455.

16  The pertinent test for recusal under the statute is "whether a reasonable person with knowledge of

17  all the facts would conclude that the judge's impartiality might reasonably be questioned."

18  *National Abortion Federation*, 257 F. Supp. 3d at 1089 (quoting *United States v. Holland*, 519

19  F.3d 909, 913-14 (9th Cir. 2008)).  The "reasonable person" for this inquiry is not "someone who

20  is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer."  *Id.*

21  (quotations omitted).  Although the analysis of each Section 455(a) recusal request must be guided

22  by "an independent examination of the unique facts and circumstances of the particular claim at

23  issue," *id.*, a well-informed, thoughtful observer would be aware that recusal is not required based

24  on the mere existence of personal or working relationships among colleagues, or even friendships.

25  *See Cheney*, 541 U.S. 913.

26        The discovery Sanai seeks goes exactly to these irrelevant concerns.  He asks to explore

27  "Judge Donato's background" and related topics that bear no meaningful connection to the

28  purposes of Section 455.  Dkt. No. 80 at 2-3; *see also* Dkt. No. 84 at 2-3 (listing discovery topics

such as Judge Gonzalez Rogers' and the Court's "personal relationships with any of the Defendants."). Whatever the outer boundaries might be for a possible factual inquiry into recusal, a question the Court does not decide today, the touchstone of relevance applies, and Sanai's requests do not meet it.

## II.     THE REQUESTS RE JUDGE GONZALEZ ROGERS

Turning to the main event, Sanai's allegations against Judge Gonzalez Rogers are entirely without foundation. He says that his "strongest" reason for recusal is the judge's "financial interest." Dkt. No. 87 at 11. It is certainly true that a financial stake in the outcome of a case is a well-established ground for recusal. *See Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009) ("Due Process Clause incorporate[s] the common-law rule that a judge must recuse himself when he has 'a direct, personal, substantial, pecuniary interest' in a case. This rule reflects the maxim that '[n]o man is allowed to be a judge in his own cause[.]'") (citation omitted). But that is not at all what Sanai is talking about.

The financial interest Sanai alleges is the pay differential between district and circuit judges. Sanai says circuit judges get paid approximately $30,000 more per year than district judges, but in fact the difference is a modest $13,200. *See* https://www.uscourts.gov/judges-judgeships/judicial-compensation. This difference is said to matter because Sanai believes that Judge Gonzalez Rogers is a leading candidate for nomination to the Ninth Circuit, and that she aspires to the salary of a circuit judge. Dkt. No. 77 at 14-15. Sanai surmises, based entirely on newspaper reports and other public sources, that Judge Gonzalez Rogers has an inside track for a nomination because she is of Hispanic descent and "pressure groups" are demanding that the White House select Hispanic judges. *Id*. at 19. In Sanai's view, Judge Gonzalez Rogers dismissed the case against Kozinski and his colleagues to curry favor with the current circuit judges and win their support for a nomination. *Id*. at 21.

The point is not well taken. Sanai's allegations are unreasonable on their face, and he has not presented any evidence that even remotely supports them. He merely parrots the speculation of press commentators about potential nominees. *See, e.g., id*. at 14-15, 19. As Justice Scalia cautioned in another recusal context, "[s]uch a blast of largely inaccurate and uninformed opinion

1    cannot determine the recusal question.  It is well established that the recusal inquiry must be

2    'made from the perspective of a *reasonable* observer who is *informed of all the surrounding facts*

3    *and circumstances*."  *Cheney*, 541 U.S. at 925 (emphases in original; citations omitted).

4         Even if Sanai had presented some evidence, which he has not done, it would not matter for

5    recusal.  That is because sitting judges play no role in the constitutional procedures that govern

6    judicial nominations.  Article III judges are nominated by the President, and confirmed by the

7    United States Senate.  *See* U.S. Const., art. II, § 2, cl. 2 (President "shall nominate, and by and

8    with the Advice and Consent of the Senate, shall appoint . . . Judges of the supreme Court, and all

9    other Officers of the United States").  Sanai's belief that "any of the Defendant [circuit] judges

10   could exercise a potential veto over Judge [Gonzalez] Rogers' appointment," and that they might

11   "blackball" her, fundamentally misunderstands this constitutional procedure.  Dkt. No. 77 at 19-

12   21.  Circuit judges have no power to make or unmake nominees.  Sanai says that the defendant

13   judges could nevertheless "communicate to President Biden," "to Attorney General Garland, a

14   former federal judge," "their lawyers [who] are members of the DOJ," or "to either of California's

15   Senators," but he offers nothing in the way of facts and evidence that might support these

16   imaginings.  *Id.* at 19.  This is not a record that supports recusal.  *See Clemens v. U.S. Dist. Court*

17   *for the Central Dist. of Cal.*, 428 F.3d 1175, 1180 (9th Cir. 2005) ("Section 455(a) does not

18   require recusal based on speculation."); *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir.

19   1993) (same).

20        This puts to rest Sanai's "strongest" theory for recusal, and his ancillary theories are

21   equally infirm.  He says that Judge Gonzalez Rogers engaged in "plagiarism."  Dkt. No. 77 at 21.

22   What this might mean is not at all clear, and the two sentences he flags in the motion to dismiss

23   order provide no meaningful information.  One relates to the State Bar Court's dismissal of

24   charges against Sanai ("all but one of the charges, a charge related to Sanai's filing of judicial

25   misconduct complaints, were dismissed"), and another to a pre-filing order that was imposed on

26   Sanai ("[i]t further required any future misconduct complaint or petition for review submitted by

27   Sanai to be lodged by the Clerk and subjected to a determination of whether it 'merits further

28   review and should be filed.'").  *Id.* at 8-14.  Nothing here amounts to a reason to disqualify Judge

*United States District Court*
*Northern District of California*

6

United States District Court
Northern District of California

1    Gonzalez Rogers under Section 455, all the more so in light of the principle that "judicial rulings

2    alone almost never constitute a valid basis for a bias or partiality motion" under Section 455(a).

3    *Liteky v. United States*, 510 U.S. 540, 555 (1994).

4       So too for the denial of leave to seek reconsideration. Sanai takes issue with the statement

5    by Judge Gonzalez Rogers that, "[t]o the extent that Sanai has issue with the Order and the

6    substance therein, the proper procedure is to appeal this Order to the Ninth Circuit Court of

7    Appeals for a review of the Order at Docket Number 72." Dkt. No. 77 at 14; Dkt. No. 75. Sanai

8    reads this as a "pre-judgment" of his post-judgment motions. This again makes little sense. The

9    order dismissing the complaint terminated the litigation, and it was perfectly appropriate for Judge

10    Gonzalez Rogers to propose that Sanai appeal rather than keep beating a dead horse in her court.

11    In light of Sanai's professed concerns about lack of impartiality, one would think he would have

12    leapt at the opportunity to move on to other judges. It is also the case that Sanai had not filed his

13    post-judgment motions at the time of the denial of leave for reconsideration, which further

14    attenuates any connection between these events. Nothing Sanai alleges here would prompt a

15    reasonable observer to conclude that Judge Gonzalez Rogers is less than impartial.

16                               **CONCLUSION**

17       Overall, Sanai's recusal theories are inherently unreasonable and untethered to any

18    evidence that might make them even colorable. A good argument can be made that they are

19    frivolous, especially in light of the fact that Sanai is a practicing lawyer who can reasonably be

20    expected to have a sharper understanding of the governing standards for recusal than a non-lawyer

21    pro se party.

22       The motion to recuse Judge Gonzalez Rogers, and the associated motions for disclosure

23    and discovery, are denied. Dkt. Nos. 77, 80, 84. The request for judicial notice and administrative

24    motion to shorten time to file a motion for post-judgment discovery, Dkt. Nos. 78, 82, are denied

25    as moot. **IT IS SO ORDERED.**

26    Dated: May 24, 2021

27

28                                  _____

                                   JAMES DONATO
                                   United States District Judge