Cyrus M. Sanai, SB#150387
SANAIS
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, California, 90210
Telephone: (310) 717-9840
cyrus@sanaislaw.com

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYRUS SANAI, an individual, | Case No.  19-CV-08162-YGR |
| Plaintiff, | |
| vs. | **REPLY IN SUPPORT OF MOTION PURSUANT TO FED. R. CIV. P. 60 FOR RELIEF FROM JUDGMENTS AND ORDER** |
| ALEX KOZINSKI, in his personal capacity; CATHY CATTERSON, in her personal capacity; THE JUDICIAL COUNCIL OF THE NINTH CIRCUIT, an administrative agency of the United States; MOLLY DWYER, in her official capacity; SIDNEY THOMAS, in his official and personal capacities; PROCTOR HUG JR., in his personal capacity; M. MARGARET MCKEOWN, in her personal capacity; RONALD M. GOULD, in his personal capacity; JOHNNIE B. RAWLINSON, in her personal capacity; AUDREY B. COLLINS, in her personal capacity; IRMA E. GONZALEZ, in her personal capacity; ROGER L. HUNT, in his personal capacity; TERRY J. HATTER JR., in his personal capacity;  ROBERT H. WHALEY, in his personal capacity; THE JUDICIAL COUNCIL OF CALIFORNIA, an administrative agency of the State of California; and DOES 1-10, individuals and entities whose identities and capacities are unknown; | Complaint Filed:   December 17, 2019 |
| Defendants. | |

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND ORDER

# TABLE OF CONTENTS OF MEMORANDUM OF POINTS AND AUTHORITIES

I.    DEFENDANTS' OPPOSITION IS BASED ON THE INTENTIONAL
      MISREPRESENTATION THAT PLAINTIFF IS ASSERTING ACTUAL BIAS ............... 2

II.   JUDGE DONATO'S VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER
      THE FIFTH AMENDMENT AND L.R. 7.3(c) MERIT THE FILING OF THIS REPLY
      AND THE SUA SPONTE VACATURE OF THE MAY 24, 2021 ORDER ......................... 2

III.  DISCOVERY MUST OCCUR BEFORE THIS MOTION IS DECIDED ............................. 6
      A. Case law and Judge Donato Reject the Defendants' Contention that Discovery is not
         Available. ................................................................................................................... 6
      B. Judge Donato Manifestly Erred in Rejecting Discovery on the Grounds it was not Relevant
         Under Section §455. ................................................................................................... 8
      C. Judge Donato's Articulated Standard of a "Reasonable Observer" is Wrong under the Law
         He Cites. ................................................................................................................... 11

IV.   PLAINTIFF HAS THE RIGHT TO FILE A MOTION TO VACATE THE MAY 24, 2021
      ORDER AS TO JUDGE ROGERS ........................................................................... 13

V.    CONCLUSION ........................................................................................................ 14

1

2

# TABLE OF AUTHORITIES

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Cases**

*Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.,* 190 F.3d 729 (6th Cir. 1999) . . . . . . . . . . . . . . . 6

*Bracy v. Gramley,* 520 U.S. 899 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bracy v. Gramly,* 81 F. 3d 684 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868 (2009) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gacho v. Wills,* 986 F.3d 1067 (7th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hurles v. Ryan,* 752 F.3d 768 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 441 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . 14

*Listecki v. Official Comm. of Unsecured Creditors,* 780 F.3d 731 (7th Cir. 2015) . . . . . . . . . 6

*Nat. Labor Relations Board v. Eclipse Lumber Co.,* 199 F.2d 684 (9th Cir. 1952) . . . . . . . . . 3

*Porter v. Singletary,* 49 F.3d 1483 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Conforte,* 624 F.2d 869 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

28 U.S.C. §455(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Other Authorities**

J. Bendery, "Biden's Team Tells Senate Democrats to Send Him Judicial Nominees ASAP",
    huffpost.com, December 30, 2020, at www.huffpost.com/entry/joe-biden-courts-progressive-
    nominees_n_5fecc527c5b6e7974fd18321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

J. Donohue, "I Was a Federal Judge.  My Former Colleagues Must Stop Attending Federalist
    Society Events, " Slate.com, November 12, 2019, at slate.com/news-and-
    politics/2021/03/biden-judges-nominations-federalist-society-tactics.html . . . . . 9, 10, 13

National Ctr. for State Cts., "Federal Judicial Selection" at
    http://www.judicialselection.us/federal_judicial_selection/federal_judicial_nominating_commis
    sions.cfm?state=FD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sen. Alex Padilla,  www.padilla.senate.gov/judicial-applications/  . . . . . . . . . . . . . . . . . . . . 10

Sen. Diane Feinstein, www.feinstein.senate.gov/public/index.cfm/applications-jud . . . . . . . . 10

**Rules**

Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 60(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

L.R. 7.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

L.R. 7.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Constitutional Provisions**

U.S. Const., amend V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.    DEFENDANTS' OPPOSITION IS BASED ON THE INTENTIONAL MISREPRESENTATION THAT PLAINTIFF IS ASSERTING ACTUAL BIAS

Defendants, like Judge Donato, intentionally misrepresent Plaintiff's recusal motion.  The Defendants contend that:

> Plaintiff's Rule 60 Motion for Relief from Judgment, ECF No. 86, is also another rehash—this time of his baseless recusal allegations. He presents his now-familiar diatribe against the Court's supposed biases against him, none of which are remotely rooted in the record.

Opposition, Docket No. 90 at 1:22-24.

Plaintiff not argued that Judge Rogers is biased against Plaintiff.  He has argued that a reasonable observer might suspect so, and requested disclosure or discovery to unearth the true facts.

## II.    JUDGE DONATO'S VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT AND L.R. 7.3(c) MERIT THE FILING OF THIS REPLY AND THE SUA SPONTE VACATURE OF THE MAY 24, 2021 ORDER

Defendants then cite to Judge Donato's May 24, 2021 order denying discovery and recusal.  Plaintiff filed his noticed motion for discovery on May 4, 2021.  *See* Docket No. 84.  The opposition was due 14 days thereafter, and a timely opposition was filed on the due date, May 18, 2021.  *See* L.R. 7.3(a);  Docket No. 88.  The reply is therefore due seven days after the deadline for filing the opposition, on May 25, 2021.  L.R. 7.3(c).

However, Judge Donato elected to eliminate Plaintiff's right of reply, guaranteed by both local rules and constitutional due process under the Fifth Amendment, by deciding the motion the day before Plaintiff was required to file his reply.  *See* Docket. No. 89; U.S. Const., amend V.

Judge Donato thus intentionally eliminated Plaintiff's right under the local rules to file a reply. This is a straightforward violation of due process as expressed in the local rules and the constitutionally guaranteed norms of civil litigation.  However, to properly preserve an argument of violation of due process, whether under the federal constitution or the federal rules, a party

-2-

must demonstrate prejudice; in the case of denying the opportunity to file a reply brief, the party claiming error must supply a reply brief or otherwise show how what would have been said in the reply brief. *See Nat. Labor Relations Board v. Eclipse Lumber Co.,* 199 F.2d 684, 686 (9th Cir. 1952).

This action is also the kind of action which creates in the mind of a reasonable observer the belief that a judge lacks impartiality or has prejudged matter. Judge Donato decided the issue of discovery without letting the normal noticed motion procedure play out or holding oral argument. While oral argument is not required if the written submissions adequately cover all issues, that was manifestly not the case here—Judge Donato acted without waiting for the process to be completed.

Judge Donato asserted that Plaintiff "appears to suggest that this Court should recuse itself on the same ostensible ground. Dkt. No. 87 at 4." No such suggestion was ever made. What Plaintiff wrote was crystal clear:

> **III. JUDGE DONATO'S INACTION ON THE MOTION FOR DISCLOSURE BY HIM PROHIBITS HIM FROM ADDRESSING THE PENDING MOTION UNTIL HE DISCLOSES OR DISCOVERY IS HELD.**
> Judge Rogers was not the only Judge for whom Plaintiff requested disclosure; Plaintiff alsorequested it of Judge Donato. See Docket No. 80. So far Judge Donato has taken no action. Since the filing of the motion, Plaintiff has learned that Judge Donato was a clerk for one of the Defendants, the late Circuit Judge Hug. That's definitely something which he should have disclosed. Even though Judge Hug is dead, those clerks who maintained personal friendships have a personal interest in preventing his posthumous reputation from being dragged down to the level of the late sexually-harassing, misogynistic Stephen Reinhardt. Whether Judge Donato remained a friend of Judge Hug around the time of his death is a matter that required disclosure, and if disclosure is not made, discovery.

Docket No. 87 at 4.

What that paragraph states is that Judge Donato should make disclosure about his own relationship with the late Judge Hug and other Defendants before moving to on to decide the motion regarding Judge Rogers. Nowhere in that section does Plaintiff state that there was, at the time of filing of the reply that constitutes Docket No. 87, sufficient grounds known by Plaintiff to request recusal of Judge Donato. It's not even implied.

What Judge Donato does here, and as will be discussed below, in numerous other parts of his order, is recast Plaintiff's crystal clear language into straw men that he can bat down.  A reasonable observer might well suspect that Judge Donato is arguing against straw men, rather than what Plaintiff actually wrote, because he does not have any valid grounds for denying Plaintiff the relief he seeks on the grounds he seeks it but is not sufficiently impartial to accept that..

A second example of Judge Donato's straw men rhetoric is where he writes that "Consequently, a litigant has no statutory right to demand any disclosures or discovery from a judge under 28 U.S.C. §455, a fact that Sanai in effect concedes."  This is simply false; Sanai never conceded that, and at page 3 of Docket 77 wrote the EXACT OPPOSITE:

> This request raises two issues. First, must the federal judge disclose the material facts concerning any relationships with Defendants, witnesses and other concerned parties? Second, even if there is no requirement, should Judge Rogers do it in this case?

> The Sixth and Eleventh Circuit have answered this question in the affirmative.

Docket No. 77 at 3.

Again, either basic English syntax befuddles Judge Donato, or he is sufficiently wedded to his conclusion such that cannot address universally adopted circuit precedent cited and quoted by Plaintiff, electing instead to falsely assert that Plaintiff concedes his points.  Even though Plaintiff explained the question at issue for disclosure by Judge Rogers, and pointed out that case law says 'yes, disclosure is required as an implication of 28 U.S.C. §455', Judge Donato mischaracterizes Sanai's words to support analysis that has been universally rejected by appellate courts.

Yet a third example of Judge Donato creating a false assertion about Plaintiff's arguments is where he writes "Sanai has now added Judge Gonzalez Rogers to the list of judges he perceives to be biased."  That's false when he writes it, just as it's false when the Defendants write it.  What Plaintiff actually argues is that Judge Rogers' statements, her conduct of the case insofar as it denied Plaintiff due process, her refusal to make proper disclosures as required under 28 U.S.C. §455, and her financial interest in the outcome of the litigation create, in the minds of reasonable observers, a doubt as to her impartiality.  Plaintiff has not argued actual bias or expressed his

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND ORDER

person opinion.

Prior to the filing of the motion, the grounds for believing that Judge Donato might be disqualified that Plaintiff was aware of were two-fold.  First was the also one of the reasons that Judge Rogers could be disqualified:  a friendship with one or more of the Defendants, as "friendship is a ground for recusal of a Justice where the personal fortune or the personal freedom of the friend is at issue….".  Amazingly enough, Judge Donato misleading claims that  *case law he cites* states the opposite, writing that: "recusal is not required based on the mere existence of personal or working relationships among colleagues, or even friendships. *See Cheney,* 541 U.S. 913." In, reality, in *Cheney v. U.S. Dist. Court for the Dist. of Columbia,* 541 U.S. 913, 916 (2004)In *Cheney,* Justice Scalia wrote that recusal is required if one is suing a government official in their personal capacity and damages are requested, but is not required where one is suing a government official **solely** in their official capacity:

> That an officer is named has traditionally made no difference to the proposition that friendship is not considered to affect impartiality in official-action suits. Regardless of whom they name, such suits, when the officer is the plaintiff, seek relief not for him personally but for the Government; and, when the officer is the defendant, seek relief not against him personally, but against the Government.

*Cheney, supra,* at 917.

Here, all the judicial defendants were sued in their personal capacity; in addition, the sixth count does not involve official action of any kind, but rather secretly causing the California Bar Association  to file a meritless bar complaint against Plaintiff after it had declined to do so.  That's something anyone can do.

Judge Donato's assertion that friendship cannot be the basis of a recusal motion is directly contradicted by the very authority he cites.[1]  His difficulties parsing legal writing are not limited to briefing written by Plaintiff, but also a judicial opinion written by the late Judge Scalia, universally recognized as one of the best and pellucid writers to have served on the United States Supreme Court.

---

[1] Plaintiff has amended his motion to exclude discovery regarding Molly Dwyer, who is only sued in an official capacity.  Obviously, entities were excluded from the subject of discovery, but for the avoidance of doubt that clarification is made as well.

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND ORDER

A second possible grounds for recusal was that the late Circuit Judge Hug might have spoken to Judge Donato about the underlying case involving Judge Kozinski.

Disclosure or discovery on both issues was requested of Judge Donato.  As discussed below, he denied both.  This triggered the right to perform discovery.

Judge Donato's disposition of the motions filed by Plaintiff raise similar issues of disqualification of him.

Plaintiff is entitled to file motion to vacate the post-judgment May 24, 2021 order.  The Ninth Circuit has held that a motion under Fed. R. Civ. P. 60 (b)(1) may be filed to attack the legal correctness of a post-judgment order.  *See Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 441 (9th Cir. 1982).  In addition, United States Supreme Court law explicitly provides that the issue of recusal can be addressed by a motion under Fed. R. Civ. P. 60(b)(6).  *See Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863 (1988).  A motion to disqualify Judge Donato is now appropriate; unlike Judge Rogers, who played coy about whether she recognized the disclosure obligation articulated by every appellate court to have considered the issue, Judge Donato affirmatively rejects it without acknowledging or addressing the unanimous appellate authority which disagrees with him.

## III.   DISCOVERY MUST OCCUR BEFORE THIS MOTION IS DECIDED
### A. Case law and Judge Donato Reject the Defendants' Contention that Discovery is not Available.

Plaintiff contended that the authority which requires disclosure also requires discovery when proper disclosure is not made; it is the remedy for violating the duty of disclosure.  See, e.g. *Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.,* 190 F.3d 729, 741 (6th Cir. 1999);  *Listecki v. Official Comm. of Unsecured Creditors,* 780 F.3d 731 (7th Cir. 2015), and *Porter v. Singletary,* 49 F.3d 1483, 1489 (11th Cir. 1995).

The arises, then, are there any examples of post-judgment discovery of judges and courts which are aimed at showing absence of an appearance of impartiality.  In fact there are numerous examples which base the right of discovery on the constitutional right to a judge who is impartial in fact and in appearance

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The leading case is *Bracy v. Gramley,* 520 U.S. 899 (1997).  In that case the appellant was a convicted felon who had been tried before the notoriously corrupt state court judge Thomas Maloney.  Maloney accepted bribes for acquittals; the appellant on habeas contended that Maloney had an incentive, in order  "[t]o deflect suspicion from his criminal scheme and give defendants an incentive to coup up bigger bribes, Maloney built a reputation as one of the most ruthless judges on the Cook County bench." *Gacho v. Wills,* 986 F.3d 1067 (7th Cir. 2021).  The appellant in *Bracy* sought reversal on the grounds of both absence of an appearance of impartiality and, in the alternative, discovery to show actual bias.  The Seventh Circuit rules as follows:

> Appearance of impropriety there was. We know this because if a judge were under indictment for accepting bribes he would not be permitted to hear any cases. Ill. S.Ct. R. 56(a)(1). But without more a defendant's conviction cannot be set aside.
>
> The petitioners also seek discovery, so that they can try to find out whether there was actual bias by Judge Maloney at their trial. Discovery is available in a habeas corpus proceeding not as a matter of course as in an ordinary civil litigation but only if the district judge finds "good cause" to order discovery. Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts; *East v. Scott,* 55 F.3d 996, 1001 (5th Cir.1995). The petitioners want to study a large sample of Judge Maloney's cases to see whether a pattern of favoring the prosecution in cases in which he was not bribed emerges, to depose "some of those persons and witnesses who were most intimately associated with Judge Maloney who may be able to provide material information on his behavior in cases where he didn't get bribes," and to get hold of any evidence that the federal government might have obtained in its prosecution of Maloney that he really did lean over backwards in favor of the government in cases in which he was not bribed — perhaps in this very case. The first proposal would not require formal discovery at all, since Maloney's cases are a matter of public record. The third too; in the first instance at any rate, all it would require is a perusal of the transcript of Maloney's trial. It is true that a part of the trial record was sealed, but it was unsealed in August of 1994, so that the petitioners' lawyers have had a year and a half to look for clues in that record. The second proposal is for a fishing expedition. Even if the expedition discovered that Maloney did lean over backwards in favor of the prosecution in cases in which he was not bribed, in order to conceal his taking of bribes in other cases, it would not show that he followed the practice in this case.

*Bracy v. Gramly,* 81 F. 3d 684, 690-1 (7th Cir. 1996)

*Bracy* filed a petition for certiorari with the Supreme Court solely on the issue of the right to take discovery, and won; the Supreme Court held that there was sufficient "good cause" to merit

deposition discovery that Circuit Judge Posner called a "fishing expedition". *Bracy, supra,* 520 U.S. at 901.

The Ninth Circuit itself has followed these rules and granted discovery against judges regarding issues of judicial disqualification. *See Hurles v. Ryan,* 752 F.3d 768 (2014).

While there used to be conflicting appellate authority on whether the constitutional standard for disqualification was different in kind from the objective standard in §455, or merely a higher standard, that question was answered in *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868 (2009). In addition to proving actual bias, a party can argue, under both §455 and due process, that there is an objective appearance of an absence of impartiality; if it is too high to be constitutionally tolerable, it violates §455 and the Fifth Amendment; if it is constitutionally tolerable, then only §455 is violated. There's no federal case law explaining where this line is drawn, however.

Judge Donato explicitly rejected the Plaintiff's assertion, supported by all Courts of Appeal to have addressed the issue, that there is a duty of disclosure under §455; he thus rejects Plaintiff's assertion that discovery is merited as a remedy for such failure. However, he also rejects the Defendants' contention that there is no right to discovery, finding that "[t]his is not to say that the door is shut to all inquiry by a party in the recusal context. There may be room for some factual investigation, but only if relevant to the purposes of Section 455." Order, Docket No. 89, at 4:14-17.

### B. Judge Donato Manifestly Erred in Rejecting Discovery on the Grounds it was not Relevant Under Section §455.

Plaintiff's discovery is focused on the following issues:

1. As to all deponents, was there a friendship between the Defendants and either of Judge Rogers and Judge Donato?

2. Is there a pattern and practice of the Defendant judges directly or indirectly expressing their views on candidates for circuit court?

3. Did anyone communicate with either Judge Donato or Judge Rogers regarding this case

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND ORDER

and the possibility of elevation to the Ninth Circuit?

4.  Did the late Circuit Judge Hug ever talk to Judge Donato about the facts of the underlying
    case?

As to the first issue, Judge Donato cited *Cheney, supra,* but got the holding 180 degrees
backwards. Judge Donato wrote:  "recusal is not required based on the mere existence of personal
or working relationships among colleagues, or even friendships. *See Cheney,* 541 U.S. 913."  In
fact, friendship is grounds for recusal where, as in this action, the Defendants are being sued in
their personal capacity:  "friendship is a ground for recusal of a Justice where the personal fortune
or the personal freedom of the friend is at issue….".  *Cheney, supra,* at  916 (2004).  Accordingly,
Plaintiff is entitled to obtain discovery to demonstrate the existence of friendships between Judge
Donato and the individual defendants other than Dwyer, and the existence of friendships between
Judge Rogers and the individual defendants other than Dwyer, as she is sued in her official
capacity only.[2]

On the second issue, Judge Donato found that sitting Circuit Judges have no power to make or
unmake nominees:

> That is because sitting judges play no role in the constitutional procedures that
> govern judicial nominations. Article III judges are nominated by the President,
> and confirmed by the United States Senate. See U.S. Const., art. II, § 2, cl. 2
> (President "shall nominate, and by and with the Advice and Consent of the
> Senate, shall appoint . . . Judges of the supreme Court, and all other Officers of

___

[2] Judge Donato is correct that working with a person is not necessarily a basis for recusal;
colleagues can despise and undermine each other.  However, the existence of a working
relationship can be an element to prove friendship, and some institutions may have cultures of
omerta where tolerance and defense of corrupt conduct is enforced.  At least one former federal
judge has attributed these qualities to the federal judiciary:

> "A distinct minority of judges behaving outside the norms with the silent
> acquiescence of the judiciary is reminiscent of the recent judicial sexual
> harassment scandal. Then, as here, some judges were aware of a minority of
> colleagues in their midst engaged in offending conduct—yet said and did nothing.
> Because of their silence, sexual harassers harmed more victims, and the
> judiciary's reputation was stained when the scandal finally exploded."

J. Donohue, "I Was a Federal Judge.  My Former Colleagues Must Stop Attending Federalist
Society Events, " Slate.com, November 12, 2019, at slate.com/news-and-politics/2021/03/biden-
judges-nominations-federalist-society-tactics.html

1

2

3

> the United States"). Sanai's belief that "any of the Defendant [circuit] judges
> could exercise a potential veto over Judge [Gonzalez] Rogers' appointment," and
> that they might "blackball" her, fundamentally misunderstands this constitutional
> procedure. Dkt. No. 77 at 19-21. Circuit judges have no power to make or unmake
> nominees.

4    Order, Docket No. 89 at 6:5-12.

5         This statements of the process as it exists today is false.  Judge Donato knows what he wrote is

6    false, because he went the current process for obtaining a district judgeship in California, which

7    which involves going through one of two nominating commissions run by California's senators.

8    *See* National Ctr. for State Cts., "Federal Judicial Selection" at

9    http://www.judicialselection.us/federal_judicial_selection/federal_judicial_nominating_commissio

10   ns.cfm?state=FD; Sen. Diane Feinstein, www.feinstein.senate.gov/public/index.cfm/applications-

11   jud (Senator Feinstein's judicial application page); Sen. Alex Padilla,

12   www.padilla.senate.gov/judicial-applications/  (Senator Padilla's judicial nomination page).  The

13   process of judicial nominating commissions providing nominations for district judgeships has

14   been followed in California since 2008, with the exception of President Trump's administration,

15   where judicial nominations were provided through the Federalist Society.  *See* J. Donohue, "I Was

16   a Federal Judge.  My Former Colleagues Must Stop Attending Federalist Society Events, "

17   Slate.com, November 12, 2019, at slate.com/news-and-politics/2021/03/biden-judges-

18   nominations-federalist-society-tactics.html ("Nine lower court judges are moderating Federalist

19   Society panels. Most are recent appointees, elevated to the federal bench by Donald Trump…..

20   Undoubtedly, this is a repayment to the organization responsible for their appointments.").

21        Judicial nominating commissions are found nowhere in the Constitution, but they are the

22   mechanism for appointment of federal judges in California employed during Democratic

23   administrations.  In performing their function, they regularly obtain solicited and unsolicited

24   recommendations and objections from sitting circuit federal judges.  C. Sanai, Decl. ¶¶2-4.

25   President Biden is utilizing the commission and Senate recommendations to fill district court

26   judgeships, and to obtain names for circuit judgeships.  *See* J. Bendery, "Biden's Team Tells

27   Senate Democrats to Send Him Judicial Nominees ASAP", huffpost.com, December 30, 2020, at

28   www.huffpost.com/entry/joe-biden-courts-progressive-nominees_n_5fecc527c5b6e7974fd18321

As set forth in the above articles and Plaintiff's declaration, it is clear that sitting Circuit Judges in the Ninth Circuit have longed played a role in vetting nominees for federal judgeships, and the judicial nominating commissions have been an institutionalized mechanism for obtaining such information.  While the Biden Administration has formally requested Senators to propose district court judges, there are no press reports about how it is picking circuit judges.  Accordingly, discovery in this area is appropriate.  Plaintiff makes the offer of proof that discovery will demonstrate that the Defendants who currently sit on the Ninth Circuit have in the past, and continue to, provide both recommendations and objections to federal circuit judge nominations, both formally and informally.

As for the last issue, as Judge Donato was a clerk of Judge Hug, and appears to have maintained a relationship through his death, discovery is appropriate on the issues of whether Judge Hug discussed with Judge Donato any of the matters alleged in the Complaint.  Several former clerks of current and former Circuit Judges have told Plaintiff that Kozinski's misconduct was a not-uncommon topic of conversation in chambers.  C. Sanai, Decl. ¶5.  Indeed, it was a topic of conversation with state appellate chambers.  *Id.*  Such conversations may have occurred between Judge Hug and Judge Donato after Judge Donato was appointed to the bench.  If he had discussions about Kozinski's misconduct, with Judge Hug, or anyone else, disqualification could be appropriate under 28 U.S.C. §455(b)(3).  However, Plaintiff does not know if such conversations occurred, and Judge Donato has clearly stated that he does not have to disclose them if they did.

## C. Judge Donato's Articulated Standard of a "Reasonable Observer" is Wrong under the Law He Cites.

Judge Donato cites a decision he wrote to state the following standard for determining recusal: ""whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *National Abortion Federation,* 257 F. Supp. 3d at 1089 (*quoting United States v. Holland,* 519 F.3d 909, 913-14 (9th Cir. 2008))."  Order, Docket No. 16-19.  Plaintiff chased the "all the facts" articulation back to a Ninth Circuit case from 1980

-11-

which has a considerably different articulation of the standard:

> The specific ground alleged for disqualification is bias or prejudice, and we think the test under either subsection (a) or (b) is the same, namely, whether or not given all the facts of the case there are reasonable grounds for finding that the judge could not try the case fairly, either because of the appearance or the fact of bias or prejudice…. While bias or prejudice may spring from many sources, often extrajudicial in their origin, the negative bias or prejudice of the kind alleged here will disqualify only if it is an attitude or state of mind that belies an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes. It is an animus more active and deep-rooted than an attitude of disapproval toward certain persons because of their known conduct, **unless the attitude is somehow related also to a suspect or invidious motive such as racial bias or a dangerous link such as a financial interest, and only the slightest indication of the appearance or fact of bias or prejudice arising from these sources would be sufficient to disqualify**.

*United States v. Conforte,* 624 F.2d 869, 881 (9th Cir. 1980).

Under the actual, full, "all the facts" standard articulated in Ninth Circuit case law, the potential bias alleged affects the amount of evidence or apparent facts required for disclosure. Plaintiff has put forward, as to Judge Rogers, three potential categories of disqualification: the first arises from financial interest, arising from her front-running status for appointment to the Ninth Circuit, and the second is favoritism based on the identifies or relationships of the Defendants; and the third is self-evident prejudgment of the issues arising from the orders and statements she made.

Judge Donato does not properly weigh the evidence or apparent evidence based on the actual "all the facts" standard. Moreover, he clearly took the position that "all the facts" means "all the facts that could be known by an omniscient observer", not all the facts that are publicly available. That's not the standard, as made clear by the United States Supreme Court:

> a violation of § 455(a) is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality, notwithstanding a finding that the judge was not actually conscious of those circumstances.

*Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 850 (1988).

Under the Supreme Court's articulation of the standard, "relevant facts" are not the true state of things, but what a reasonable person would suspect, even if the suspicions turned out to be wrong.

Judge Donato gets this wrong because he cites a passage from *Cheney* that is speaking to the

-12-

legal understanding of the "reasonable observer" and not the true facts.  What Justice Scalia

actually wrote was as follows:

> With regard to the law, the vast majority of the editorials display no
> recognition of the central proposition that a federal officer is not ordinarily
> regarded to be a personal party in interest in an official-action suit. And those that
> do display such recognition facilely assume, contrary to all precedent, that in such
> suits mere political damage (which they characterize as a destruction of Cheney's
> reputation and integrity) is ground for recusal. Such a blast of largely inaccurate
> and uninformed opinion cannot determine the recusal question. It is well
> established that the recusal inquiry must be "made from the perspective of a
> reasonable observer who is informed of all the surrounding facts and
> circumstances." *Microsoft Corp. v. United States,* 530 U. S., at 1302
> (REHNQUIST, C. J., respecting recusal) (emphases added) (citing Liteky v.
> United States, 510 U. S. 540, 548 (1994)).

*Cheney, supra,* at 924.

The theoretical "reasonable observer" that Judge Donato utilized is not someone who

understands the law, but rather a legal ignoramus: Judge Donato states that "well-informed,

thoughtful observer would be aware that recusal is not required based on the mere existence of

personal or working relationships among colleagues, or even friendships. *See Cheney,* 541 U.S.

913." Order, Docket No. 89 at 4:23-29.  A legally literate "reasonable observer" would in fact

know that in this action, where all the judicial defendants are sued for damages in their personal

capacity, "friendship is a ground for recusal of a Justice where the personal fortune or the personal

freedom of the friend is at issue….". *Cheney, supra,* 916 (2004); friendship is only irrelevant

where the individual defendants are solely sued in their official capacity.

Even though the law allows recusal decisions to be made on evidence that is publicly

available, that does not mean more evidence and facts should not be obtained.  It is in the public

interest to have maximum transparency about these issues, particularly given the history of "silent

acquiescence to the judicial misconduct of Judge Kozinski and others.  See "I Was a Federal

Judge," *supra.*

## IV.    PLAINTIFF HAS THE RIGHT TO FILE A MOTION TO VACATE THE MAY 24, 2021 ORDER AS TO JUDGE ROGERS

Plaintiff will be filing, on June 3, 2021, a motion under Fed. R. Civ. P. 60(b)(1) for

reconsideration of the Judge Donato's order as to Judge Rogers' disqualification and discovery.

The Ninth Circuit has held that a motion under Fed. R. Civ. P. 60(b)(1) may be filed to attack the legal correctness of a post-judgment order. *See Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 441 (9th Cir. 1982).

Plaintiff will also be filing a new motion for discovery or disqualification under Fed. R. Civ. P. 60(b)(6) as against Judge Donato, and on a new theory, as to Judge Rogers.  This motion will be filed on June 3, 2021.  It would have been filed today except Plaintiff discovered today, June 1, 2021, that on May 11, 2021 one of the most respected legal scholars in the United States published a book that has a chapter devoted to the underlying facts of the Complaint.  This book, in addition to facts arising from Judge Donato's spectacular misrepresentation of *Cheney, supra,* gives rise to a new grounds for disqualification not yet asserted.

## V.    CONCLUSION

The motion to vacate cannot be addressed until Plaintiff's motions regarding discovery and disqualification are addressed.  Once that is done, oral argument should be held on this motion, Plaintiff's contentions directly addressed, and then judgment vacated and leave to file the First Amended Complaint attached as Exhibit 2 to the motion to vacate pursuant to Fed. R. Civ. P. 59 granted.

Dated:  June 1, 2021

By: _____/s/ Cyrus Sanai_____ _____
                CYRUS SANAI
                Plaintiff

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND ORDER

# DECLARATION

Cyrus Sanai hereby declares as follows:

1.      I am an attorney admitted in the state of California, and have been so admitted since 1990.  The following facts are taken from personal knowledge, except where so indicated.

2.      I am friends or acquaintances with over 50 attorneys and law professors who have clerked in the Ninth Circuit Court of Appeals and in district court courts within the Ninth Circuit. Over the past 20 years I have inquired about judicial practices within the Court of Appeal and district court.  None of these individuals have agreed to have their identities discloses, as they fear retaliation by federal judges.

3.      Every one of the 23 former clerks in the Courts of Appeals I spoke to have stated that they observed the judges either promoting or impeding the appointments of lawyers to governmental posts, including federal judgeships, positions on Congressional staff, and positions within United States attorneys office.  In the case of assistance, these included letters of support, emails of support, and telephone calls.  In the case of objections, the means were telephone calls or emails.   Some judges were more active in discouraging comments than others.   Where the comments were negative, the opinions were most often unsolicited.

4.   Those of my friends and acquaintances who served as Courts of Appeals clerks stated that the big behind the scenes machinations regarding federal judgeship appointments were often directed at Senators.  For those who served as clerks in California, the process of recommending and discouraging potential nominees was aimed at both Senate judicial commissions and the Senators themselves more often than White House staff.

5.   All of the clerks who served in the Ninth Circuit, as well as my friend the late L. Ralph Mecham, the former head of the Administrative Office of the Courts, informed me that the ongoing misconduct of Defendant Alex Kozinski was a frequent topic of discussion in federal court chambers and the Supreme Court under the late Justice Rehnquist.  In addition, I attended approximately half of the hearings of the California Judicial Performance Commission regarding the now removed California Court of Appeals Judge Jeffrey Johnson.  His colleagues testified that the subject of Alex Kozinski's sexual misconduct was raised several times within the state court system in discussions amongst justices.

I declare, under penalty of perjury of the law of the United States that the foregoing is true and correct.         Dated as of June 1, 2021  in Santa Monica, California

/s/ Cyrus Sanai